## JACOBS v. UNITED STATES.

(Circuit Court of Appeals, First Circuit.    April 29, 1908.)

### No. 747.

1. INDICTMENT AND INFORMATION—MATTERS REQUIRING PROOF—RECITALS IN
   INDICTMENT.

   The rule applied that recitals in an indictment that certain details of
   the offense charged were to the grand jurors unknown do not require the
   prosecution to prove on the trial that they were in fact so unknown, nor
   is the fact that a witness at the trial discloses a knowledge of such facts
   evidence to the contrary of such recitals.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and
   Information, § 530.]

2. WITNESSES—RE-EXAMINATION—DISCRETION OF COURT.

   The rule applied that under the federal practice, permitting the re-ex-
   amination of witnesses in a criminal case with respect to matters not
   brought out in cross-examination is within the discretion of the trial
   court.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 930.]

3. BANKRUPTCY—OFFENSES AGAINST BANKRUPT LAW—EVIDENCE—COMPETENCY.

   On the trial of a bankrupt who was a dealer in jewelry, charged in
   the indictment with having concealed from his trustee certain jewelry,
   it was not under the circumstances error to admit evidence of the
   amount and value of defendant's stock in trade a few days prior to the
   filing of the petition in bankruptcy, and also a short time afterward,
   where the jury were properly instructed and cautioned in reference to
   such testimony.

4. SAME.

   On such trial proofs of claims filed against the defendant's estate in
   bankruptcy not shown to have been examined or approved by him were
   not admissible as admissions as to the amount of property he had pur-
   chased prior to his bankruptcy, and to be accounted for.

5. WITNESSES—COMPETENCY—HUSBAND AND WIFE—CONFIDENTIAL CHARACTER
   OF COMMUNICATION.

   On the trial of a criminal case, the admission of the testimony of the
   divorced wife of defendant as to the contents of a lost paper, which had
   been handed to her by defendant while she was still his wife, during a
   consultation between them and others relating to matters out of which
   the prosecution arose, was not reversible error, where it did not appear
   from the record that the communication was confidential, or that the
   paper was not read by the others present.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§
   739, 740.]

6. SAME—DEFENDANT IN CRIMINAL CASE—PRIVILEGE.

   On the trial of a bankrupt for a criminal offense, it was error to per-
   mit the prosecuting attorney, on the cross-examination of defendant as
   a witness, to read from a copy of his examination before the referee in
   the bankruptcy proceedings, and to interrogate him thereon for the pur-
   pose of impeachment, under Bankr. Act July 1, 1898, § 7a (9), c. 541,
   30 Stat. 548 (U. S. Comp. St. 1901, p. 3424).

In Error to the District Court of the United States for the Dis-
trict of Massachusetts.

Elbridge R. Anderson (Charles W. Bartlett and Arthur Smith, on
the brief), for plaintiff in error.

Asa P. French, U. S. Atty., and Guy A. Ham, Asst. U. S. Atty.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. The plaintiff in error was convicted on an indictment based on that portion of the twenty-ninth section of the bankruptcy act of July 1, 1898 (chapter 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), which punishes a bankrupt who has "knowingly and fraudulently concealed while a bankrupt from his trustee any of the property belonging to his estate in bankruptcy." He assigned 41 alleged errors, covering 13 printed pages of the record. A number of his propositions are so clearly contrary to law, and have been so thoroughly settled, that. we ought not to have been troubled with them. Among these is the claim with regard to an allegation in the indictment as to which the grand jury reported that the details were unknown to them. The plaintiff in error maintains that the burden rested on the United States to show that they were in fact so unknown, when it has been twice held otherwise by the Supreme Court in cases not brought to our attention by either party. Coffin v. United States, 156 U. S. 432, 451, 15 Sup. Ct. 394, 39 L. Ed. 481, and Frisbie v. United States, 157 U. S. 160, 167, 15 Sup. Ct. 586, 39 L. Ed. 657. Another proposition is the exception taken to the re-examination of witnesses with reference to matters not brought out in cross-examination; while, if anything is settled in federal practice, it is that the direction of the examination of witnesses in such particulars is within the discretion of the trial court. As to the first proposition, we may add that it is clear that the mere fact that a witness is called at the trial who then discloses that he knows that which the grand jury reported unknown to them, is not evidence to the contrary of the allegation of the indictment. It is merely subsequent matter. As to the second proposition, we may also add that, with reference to every topic which is ordinarily controlled by the discretion of the court, there may be such an abuse of discretion that an exception lies; but no attempt at a showing of that character is made here. Like well-known rules dispose of all exceptions based on the fact that the court allowed re-examination of the witnesses for the United States after they had been cross-examined.

There are two counts in the indictment; one alleging that the bankrupt concealed from his trustee a diamond brooch, and the second the concealment of "certain jewelry," a more particular description of which is said to have been to the grand jurors unknown. The traverse jury returned a verdict on each count, finding Jacobs guilty on each; and, so far as anything is shown in the record, he was sentenced on both.

The record shows that the bankrupt had been a jeweler in Worcester, and that his stock consisted of jewelry, and more particularly of diamonds. Therefore any evidence with reference to his stock in trade, although not more particularly described, may well be regarded to have related to "jewelry" as that word is used in the second count.

One alleged error called to our attention relates to the testimony of a witness in regard to the amount and the value of the stock found in Jacob's store about the 15th day of October; the petition in bank-

ruptcy having been filed on the 3d day of September. Subject to the objection of Jacobs, this witness, who made an appraisal of the stock at the date named, was permitted to testify what he then found, and also to estimate the value of it, which he did at from $2,000 to $3,000. Each branch of this proof was objected to on the ground that it was immaterial what was found at that late date. On the other hand, the United States offered the testimony saying that they would show that, just prior to the bankruptcy, there was a much larger amount of stock on hand of great value; and on that assurance the testimony was admitted. Subsequently, the United States introduced a witness who testified that, on the 16th day of August, Jacobs took him outside his shop, and showed him the goods in the window, and said that the stock was worth about $15,000. Of course such a comparison of values is a very dangerous class of testimony, and very apt to mislead; but, as the court is to be presumed to have fully cautioned the jury in reference to it, we see no possible ground on which it could be entirely excluded under the second count in view of the description of the property which that count alleges to have been concealed, and of the fact that the stock wholly consisted of jewelry.

Another alleged error relates to the testimony of the witness who had the conversation with Jacobs in August. The conversation as a whole was objected to as immaterial, but what we have already said disposes of this. During the course of the conversation, as the witness testified, Jacobs showed him some promissory notes, claiming to own them, and he also testified in reference to prices which Jacobs paid for certain goods. These were objected to; but, as the objections and exceptions were both general, they do not, under the circumstances, and especially under the practice in this court, require our attention because, so far as we can discover, the conversation as to these topics was immaterial and could not have been prejudicial.

Another topic brought to our attention by the plaintiff in error is covered by the following extract from the record:

"William Nelson, recalled, testified that he had all the papers connected with the bankruptcy proceedings in the case of the defendant, Jacobs, except what had been put in evidence; that he had 23 proofs of claims besides those that were marked in evidence. (Twenty-three proofs of claims are offered in evidence.).

"Objected to on the ground that proofs of these individual claims were not competent to prove anything so far as the ownership of property was concerned, or whether property was in the hands of the bankrupt or not at any time either before or after the date of the bankruptcy. They were offered as admissions of the defendant as to ownership or possession of property.

"The Court: I rule that proofs of claims are admissible, because they are a part of the record of the bankruptcy proceedings.

"Mr. Anderson: And will your honor save my exception?

"The Court: Your exception is saved.

"Mr. Anderson: And to each one of them. I understand I must be particular about them.

"Twenty-three proofs of claims were marked 'Exhibit 7,' which may be referred to at the hearing on this bill."

The purpose of admitting the proofs of claims was evidently in line with the testimony which we have just considered; that is, with the view of showing that the bankrupt had purchased prior to his

bankruptcy a large amount of goods. This, we understand, is what was meant by the expression in the course of the discussion that they were offered as admissions on the part of the bankrupt as to ownership or possession of property. We can conceive of no other purpose for which they were admitted, and we assume that we are right in that particular. Clearly, unless some special reason is shown to the contrary, these proofs were strictly inter alios, mere declarations of third persons; and the admission of them was a plain violation of the rule relative to the use of that class of evidence. It is claimed, however, by the United States, that it was the duty of Jacobs, under the statutes in bankruptcy, to examine the claims when offered in proof, and to advise if they were not correct. This, however, is only a partial statement, and what is omitted is fatal to the proposition. It is true that section 7 of the act of July 1, 1898 (30 Stat. 548, c. 541 [U. S. Comp. St. 1901, p. 3424]), provides that, in the case of any person having to the knowledge of the bankrupt proved a false claim, he (the bankrupt) shall disclose that fact to his trustee; but it also further provides that he shall not be required "to examine claims except when presented to him unless ordered by the court or a judge thereof for cause shown." There is no evidence in the record of any such presentation to Jacobs of the claims in question, or that he had any actual knowledge of what was proved against the estate, or that he had ever been requested in any way to take any part in reference thereto. Consequently, the admission of this evidence was clearly erroneous and prejudicial. It relates, however, only to the second count, because it was only as to the second count that a comparison could be useful as between the amount of assets which the bankrupt had prior to the bankruptcy and what was turned over to his trustee. The United States claim that the plaintiff in error opened the door for this evidence; but, as the case results, it is not necessary that we should determine this proposition.

An important question arises from the fact that she who had been the wife of the bankrupt, but had been divorced from him before the trial, testified against him. Among other things, she testified to an interview occurring before the divorce. There were present, besides the witness and the bankrupt, the bankrupt's brother and his wife. It is evident that the gathering of the four was an open consultation between them as to the method of meeting certain proceedings against the bankrupt which were anticipated, and, so far as we understand the record, these proceedings included the probability of the indictment now pending before us. At any rate, the nature of the conference was a joint consultation of the character which we have described. The plaintiff's former wife testified that during the conference the bankrupt gave her a slip containing questions that were likely to be asked her as a witness, and proposed answers. This paper was kept for several weeks and then destroyed or lost. She was asked by the prosecuting attorney what she could remember as to its contents. This was objected to on the ground that the paper was a communication given by the husband to the wife, and therefore inadmissible. The testimony asked for was admitted, and an exception saved. The ob-

jection stated that the paper was not read in the presence of any third person, but the record does not show whether it was so read or not. The passing of it by the bankrupt to his wife was a part of the occurrences during the joint consultation of the four persons. The rule is clear that communications between a husband and wife are ruled out only when they are confidential. Chase's Stephens' Digest of the Law of Evidence (2d Ed.) 278. The rule is also stated incidentally to the same effect in Stein v. Bowman, 13 Pet. 209, 222, 10 L. Ed. 129, and Hopkins v. Grimshaw, 165 U. S. 342, 349, 17 Sup. Ct. 401, 41 L. Ed. 739. Therefore the contents of the paper in question could not be excluded unless it was a matter in confidence between the husband and the wife as that rule is usually understood. Whether it was a matter in confidence between the husband and the wife was, of course, a question to be passed on in the first place by the presiding judge, who must, in the first place, determine whether or not the evidence was admissible or otherwise. His ruling on a question of that character where the facts were clearly doubtful would not be set aside by an appellate tribunal. Inasmuch as the rule of law is such a common one, and so well known, and as the objection was of such a character as to clearly call the attention of the presiding judge to whatever propositions were in issue, we must assume that his ruling involved a finding by him that the delivery of the paper from the husband to the wife was a mere incident to the general consultation between the four parties, and therefore not at all in confidence. There was no such preliminary examination in form, although it might have been insisted on by the bankrupt, and we have therefore nothing to show that the paper was not, in fact, read to the other persons to the interview, or read by them, or to show that it was at all confidential. Therefore this ruling of the learned trial judge must stand.

The most important question in the case arose as follows: Previous to his trial, Jacobs had been examined as a bankrupt. The seventh section of the bankruptcy act of July 1, 1898, provides: "But no testimony given by him"—that is, the bankrupt—"shall be offered in evidence against him in any criminal proceeding." The bankrupt offered himself as a witness. On the cross-examination, a book was produced called the "sales book," which we understand to have been a book kept by the bankrupt in his business as a jeweler, though this is not clear to us. From that book apparently some leaves had disappeared, and apparently there was a claim that this was the result of mutilation by the bankrupt. After he had been somewhat inquired of by the prosecuting attorney in reference to this book, the question was put: "Well, you gave an altogether different description about that, about what happened to that book, didn't you, before the referee?" This was objected to in a proper and clear manner, on the ground that, under the statutory provision which we have cited, it was not lawful to use the examination in these proceedings. The question was admitted; and exceptions were saved to that entire line of interrogation. Following it up, quite a list of questions was asked the bankrupt as to his examination before the referee. The following is illustrative: "Do you remember a question like this: What became of those ac-

counts?" The bankrupt was compelled to answer. Apparently, from the way in which these questions were put, the prosecuting attorney had in his hands the examination before the referee, and read from it in the presence of the jury.

In answer, the United States make two replies: One is that the examination—that is, the paper itself—was not put in evidence, which is true; and the second is that the questions put to the bankrupt on cross-examination come within the general rule with reference to the protection of the fifth amendment to the Constitution, which is waived when an accused person voluntarily offers himself as a witness, in accordance with Fitzpatrick v. United States, 178 U. S. 304, 315, 20 Sup. Ct. 944, 44 L. Ed. 1078, and Sawyer v. United States, 202 U. S. 150, 165, 26 Sup. Ct. 575, 50 L. Ed. 972. The difference, however, between the two positions is fundamental. The waiver of the constitutional provision concerns merely the personal conduct and condition of the witness. He offers himself as a witness, and therefore puts himself in the position of any other witness so far that he may be examined with reference to anything pertinent to the case and admissible in evidence therein. Of course, the cross-examination of one witness may, for the purpose of testing his character, run out into a line of questions which would not be relevant when put to another witness; but a line of questions of the same class might be put to the second witness and be relevant. Here the issue is not with reference to the conduct and situation of the witness himself, but with reference to the conduct and situation of the prosecuting attorney with regard to something prohibited by the statute, and which could not be testified to by any other witness.

Running this out practically, the essential distinction becomes plainer. The United States say that they proceeded as they did for the purpose of testing the credibility of Jacobs as a witness. In the federal courts, when it is desired to contradict a witness or determine his credibility by putting in proof of a prior contradictory conversation, or a contradictory letter or document of any kind, it is necessary to first interrogate the witness in reference thereto. Of course, this does not apply to the full extent where a party is testifying in his own behalf, because there the letter, document, or conversation can be introduced for the purpose of contradicting the party in interest, and showing that his case is in fact otherwise than as stated by him, and, indeed, independently of any statement he makes on the stand. It is not claimed here, however, that under the statute the examination before the referee could be introduced for either of those purposes. Therefore, as the preliminary examination could not have been followed up in the usual way by the subsequent introduction of the written examination, the cross-examination was not within any rule of practice and was clearly unlawful.

In short, the matter cannot stand like the waiver of the constitutional guaranty because that waiver, as we have said, relates to evidence which would be admissible if it came from some other person as a witness, while here the alleged waiver related to evidence which would not be.

Both parties appealed to Burrell v. Montana, 194 U. S. 572, 24 Sup. Ct. 787, 48 L. Ed. 1122, but the issue here was not raised in that case. There no objection was made to the use of the examination, and the only question was whether the person charged with an offense was entirely exempt from prosecution. If any of the expressions in that opinion would have any proper weight here, they would be against the United States.

The underlying philosophy of the statute in question is that, as a matter of justice to the bankrupt, and also for the interests of creditors, he should be encouraged to testify freely in his examination; but he would have no encouragement thereto if, on being prosecuted for an offense, he could not undertake to absolve himself by his own testimony except at the risk of being tripped or embarrassed by what he had previously sworn to. To permit a course of cross-examination in the method here, whether the documentary evidence taken before the referee was produced in the presence of the jury or not, would be simply to permit an evasion of the statute, because to do so would involve the mischief which the statute intended to guard against, in that the witness might be more harassed and prejudiced than he would be if the whole document had been frankly put into the case.

With reference to this issue, the plaintiff in error has not called our attention to the question whether or not the course pursued by the United States might have been prejudical to him. In fact, his propositions with reference to nearly all, if not all, the numerous issues sought to be raised by assigning 41 alleged erroneous rulings are defective in the same particular. The fact seems to be often overlooked that it is not only necessary to show that a ruling was erroneous, but also to point out something which would raise a presumption that the error was, or might have been, prejudical. In this case the prejudicial nature of the error suggests itself from a perusal of the record, and also by the statement of the prosecuting attorney that the method of examination objected to was for the purpose of testing the credibility of the witness. The proofs as to the first count in the indictment, which related to the diamond brooch, consisted very largely, we might say almost entirely, of the testimony of the bankrupt against that of his divorced wife. The charge of the learned judge, which is printed in the record, shows that he regarded these statements as practically irreconcilable, so that the question was one of veracity. What we see of the record satisfies us that such was the fact. Under these circumstances, the credibility of the bankrupt was a matter of the highest importance; and, in our opinion, the method of cross-examination adopted was calculated to place him in a very unfortunate position before the jury, so far as the necessity of balancing his testimony was concerned; and, consequently, we think this was an error which requires that the judgment and the verdict on both counts should be set aside.

With reference to the numerous other alleged errors, it is only with very great difficulty that we could follow them up one by one, and explain our views in regard to each. Where there are so many assigned as we find here, it becomes physically necessary for us to protect our-

selves behind our rules. As we have said in other cases, we ordinarily do so unless we perceive something where serious injustice would be done unless we made a special investigation. In this connection we refer especially to the second subparagraph of paragraph 2 of our rule 24 (150 Fed. xxxiii, 79 C. C. A. xxxiii), which requires, not only that the particular pages where questions arise on the introduction of evidence should be pointed out, but that the party complaining should put his finger on the very spot. In this case, for example, with regard to the question of using the examination before the referee, we were referred in gross to pages 59 to 75 of the record, with nothing to assist us as our rules require. The question involved was so serious a one, however, that, in accordance with what we have said as to our exceptional practice, we followed through those pages until we thought we comprehended the positions of the trial court and of the parties therein. Other instances of the kind, however, we pass by except with the most cursory examination. Again we are met by objections in gross to certain questions put by the prosecuting attorney, to the effect that they were leading questions, which, of course, is of no consequence in the Court of Appeals except in very extreme cases, that they were indefinite, that it was impossible to know what was meant by them, that they suggested to the witness an improper inference, and perhaps other subtopics. It cannot be expected that the court will take a consolidated group of objections like this and divide it up, and sift out the record applicable to each branch thereof.

An omission quite general, and not at all peculiar to this case, arises from the fact, to which we have referred, that parties seem to overlook that it is not sufficient to show that a certain ruling was technically erroneous, but that it must also be shown that it was prejudicial, or, at least, that there is a presumption that it was prejudicial within the liberal rules of the Supreme Court in this respect. With all the various matters brought to our attention, we do not recall that there was a single one as to which it was pointed out to us that the alleged error was prejudicial, or that there was any presumption that it was so. Other propositions were submitted without argument, with the mere statement that they were not waived. This does not require us to give any attention to them. Therefore, on the whole, we can only say, as to the various alleged errors which we have not specifically considered, that our impression is that the District Court was correct in its rulings. It may be that, if the same questions should be carefully presented to us again, we might be compelled to take a different view from that which now presents itself; but, on the whole, we feel justified in trusting to the probability, or, at least, to the possibility, that, on a new trial, they may all disappear.

The judgment and the verdict in the District Court are set aside, and the case is remanded to that court for further proceedings in accordance with law.