## ALKON v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. August 13, 1908.)

No. 766.

1. CONSPIRACY—INDICTMENT—CONCEALMENT OF PROPERTY BY BANKRUPT.

An indictment for conspiracy that one of the conspirators should purchase goods, and afterwards go into bankruptcy and that the goods should be concealed by the other, in violation of Bankr. Act July 1, 1898, c. 541, § 29b(1), 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), which punishes concealment of property "while a bankrupt," is not insufficient because it avers that the conspiracy was formed and the goods were to be concealed prior to the bankruptcy, where it also avers that it was the intention to continue the concealment thereafter.

2. SAME—TRIAL—SUFFICIENCY OF EVIDENCE.

Evidence *held* sufficient to sustain the action of the trial court, in a prosecution for conspiracy, in overruling a motion by defendants for direction of a verdict at the close of the prosecution's case, in view of the rule that conspiracy may be determined by inference from the facts proved.

3. CRIMINAL LAW—EVIDENCE—ADMISSIONS OF CONSPIRATOR.

In a prosecution for conspiracy, the alleged purpose of which was that one of the conspirators should purchase goods on credit, deliver them to his co-conspirator for concealment, and then become a bankrupt, evidence that, after the date of the conspiracy, such co-conspirator solicited a third person to enter into a similar scheme, and stated that "I have handled several of those cases," was admissible, as an admission to go to the jury.

4. SAME — APPEAL AND ERROR — REVIEW—ERROR IN ADMISSION OF EVIDENCE—PREJUDICE.

It is the rule in the federal courts that where a party persisted in putting in testimohy which was objected to, and the admission of which was error, the error is fatal if the testimony was or might have been prejudicial.

5. WITNESSES—PRIVILEGE OF ACCUSED IN CRIMINAL PROSECUTION.

Under Rev. St. § 860 (U. S. Comp. St. 1901, p. 661), testimony given by a witness under subpœna in a bankruptcy proceeding cannot be given in evidence against him on a subsequent criminal prosecution, and it is prejudicial error to permit him to be asked on his cross-examination as a witness in such a prosecution, if he did not in his testimony in the bankruptcy pro-

ceeding make certain statements, and then to admit the notes of his examination therein for the purpose of contradicting and impeaching him.

In Error to the District Court of the United States for the District of Massachusetts.

Elisha Greenhood, for plaintiff in error.

Asa P. French, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. Barish and Alkon were indicted for a conspiracy, the substance of which was that Barish should purchase goods, and Alkon should conceal them, and that afterwards Barish should go into bankruptcy, and the concealment should continue after the bankruptcy, with the intention that at some subsequent time the profit by the concealment should be divided between Barish and Alkon. Both were convicted, but the only writ of error before us is Alkon's.

We are informed by our own records, to which by the settled rules we are authorized to turn, that Barish sued out a writ of error, but that on his own motion the same has been dismissed; and it is now too late for him to sue out another. The only two persons charged as conspiring were Barish and Alkon, so that, except in extreme cases, such as the death of one of the alleged conspirators or his absence from the jurisdiction, unless both could be legally convicted, neither could be. Nearly all the exceptions brought to our attention were taken jointly by both Barish and Alkon. Not only for this latter reason, but also because of the fact of the necessity of a legal conviction of both alleged conspirators in order to accomplish the legal conviction of either, it would seem as though in a case of this character there should be but one writ of error, and that a joint one. Nevertheless the practice is the other way, which is also in accordance with the authorities. 1 Bishop's New Criminal Procedure, § 1039. We are compelled to deal with the position as we find it, remarking that it may be, following out the rules practiced in High v. Coyne, 178 U. S. 112, 20 Sup. Ct. 747, 44 L. Ed. 997, and in Washington Company v. Lansden, 172 U. S. 534, 556, 19 Sup. Ct. 296, 43 L. Ed. 543, that we might reverse the judgment in toto as against both Barish and Alkon, if a proposition to that effect had been submitted to us by the parties in such form that we could properly consider it.

The first proposition is that the indictment alleged no offense because there was no existing bankruptcy when the conspiracy originated, while the statute—section 29 of the bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433])—punishes only concealment of goods "while a bankrupt"; and it is said that, as the alleged conspiracy related only to the doing of something which was not illegal when the conspiracy originated, the statute under which the indictment was found did not apply. That result would follow if the proposition as to the extent of the conspiracy was true; but it included an intent to continue the concealment until after Barish became a bankrupt, and it was like all conspiracies in that it related to something in futuro. The plaintiff in error cites no case in support of his

position; and in common with the Circuit Court of Appeals for the Second Circuit, in Cohen v. United States (C. C. A.) 157 Fed. 651, 654, it does not occur to us that there is anything in principle or on authority which invalidates the indictment on this account.

At the close of the proofs for the United States, Alkon and Barish jointly moved that the court direct a verdict in their favor. The court refused this request. As we understand the record, the court expressly reserved an exception to this refusal notwithstanding Alkon and Barish afterwards offered proofs in their own behalf. Passing by any question whether this assurance on the part of the court should not be accepted as avoiding the common rule by virtue of which this subsequent going on with the defense waived the motion to direct a verdict, we cannot as a court of law hold that the District Court was in error in refusing the motion. There was evidence that goods purchased by Barish were stored in abnormal quantities on Alkon's premises, and that these goods were not disclosed to Barish's trustee in bankruptcy; and some of the circumstances with reference thereto were of a decidedly suspicious character. There was evidence that Alkon knew the facts in regard to the storage of goods, and of a conversation between Alkon and one Lambkin, sufficient to bring before the jury the question whether Alkon had not made a general confession which covered the fact that he contemplated Barish's bankruptcy and a fraudulent intent in reference thereto. The rule of law is well settled that in conspiracy cases it is often necessary to resort to inferences, and that it is proper so to do. It is also settled that it is not required to prove by direct evidence an agreement to act together, and that "ordinarily it is only necessary to prove the acts of particular defendants, leaving the question of conspiracy to be determined by inference." Wharton's Criminal Law (10th Ed., 1896), § 1401; 2 Bishop's New Criminal Law, § 227 (2); Russell on Crimes (International Ed., 1896) 533.

The record does not purport to give all the evidence, because the bill of exceptions concludes with a statement that what is recited in it was "substantially all." The case in the way shown to us is exceedingly thin, and, if we were judges of the fact as well as of the law, it may be that we should find against the United States in reference thereto. As, however, the proofs in cases of conspiracy are frequently purely inferential, we cannot say that there were not circumstances which appeared at the trial, but which are not shown, and which justified the District Court in sending the case to the jury. In the form in which the case comes to us, it is not so bare of possibilities that, sitting as a court of law, we can declare that there was error in overruling this motion.

There were put in evidence two conversations with Lambkin, the purpose of which was to show an intent on the part of Alkon to induce Lambkin to enter into a scheme like that charged in the indictment. These conversations were objected to as res inter alios; but the United States claim that they come within the rules by virtue of which various independent offenses akin to the one charged, and nearly contemporaneous with it, are sometimes allowed to be proved. So far as this proposition is concerned, it may be these conversations go beyond

what the law permits; but the last one, taken as a whole, was admissible. It was as follows:

"That later the witness accidentally met Alkon, and Alkon said: 'Did you decide about that scheme I was telling you about?' That the witness said, 'Which one?' and Alkon replied: 'You know I spoke to you about getting all the goods you possibly could and turn them over to me, and I would see your way through bankruptcy without any trouble.' That Alkon said further that, if any of the dealers wanted any reference regarding the witness's credit, he would give the witness all the reference they wanted. That witness told Alkon that he 'did not care to be mixed up in any such business.' That he met him a third time and Alkon asked him again if he had decided on the same subject, and, on witness saying that he 'did not care to be mixed up in any such business,' Alkon said: 'Why, it's a cinch. I have handled several of those cases.'"

This conversation was about two months after the date of the alleged conspiracy, and it was an open admission by Alkon that he had at least on one occasion not remote been guilty of all the elements entering into the offense charged by this indictment. We cannot hold that the court was not justified in letting this go to the jury for the purpose of a determination by it whether this admission covered the alleged conspiracy with Barish. At the trial plaintiff in error made a distinction between this conversation and the earlier conversation which did not contain such an admission as we have described. One objection was that, if any part of these conversations was admissible, it was only the latter part, meaning, of course, the statement of what Alkon had previously done which we hold to have been admissible. Even this was objected to generally. Yet this distinction was clearly made, and might be of effect as to the first conversation except for the fact that, as the record is made up, it was apparently necessary to introduce it in order to explain the second. The second commenced with the interrogation from Alkon to Lambkin, "Did you"—that is, Lambkin—"decide about that scheme I was telling you about?" This connects the two conversations in such way that the second was not comprehensible without the first. Consequently, as the record stands, both, or, at least, parts of both, were admissible, though it is possible that some parts of each should have been ruled out if specifically objected to. It is also possible that the court, if asked so to do, might have been required to point out to the jury the limitation to be put on the use of the first conversation, or parts of it. But such distinctions were not made at the trial by the plaintiff in error, and we are not called on to make them.

An examination of our opinion in Jacobs v. United States (C. C. A.) 161 Fed. 694, passed down on April 29, 1908, and the statements of facts and law therein contained, which we adopt as introductory here, will save much explanation with regard to the next proposition which we have to discuss. Alkon was examined before the referee in the bankruptcy of Barish. There is no suggestion that his appearance there was voluntary, and, indeed, the record says he was a subpœnaed witness. Alkon testified in his own behalf in the pending matter in the District Court On his cross-examination the attorney for the United States, subject to objection and exception, was permitted to ask him particularly whether in testifying before the referee he had not made

a number of statements conflicting with his evidence on the trial now before us. The record details only one statement, which related to a question of a petty balance of accounts between Barish and Alkon, the importance of which is not made plain. The objection to this examination was based on section 860 of the Revised Statutes (U. S. Comp. St. 1901, p. 661). Subsequently the attorney for the United States called the stenographer who had made the notes of the examination of Alkon before the referee, who thereupon read portions thereof. The record states, not only that the portions of the testimony so read related to the matters about which Alkon had been cross-examined, but also that this portion of the cross-examination objected to was to test the credibility of the witness. In all particulars, unless as to the question whether or not the cross-examination was prejudicial to Alkon, the case before us is strictly analogous to Jacobs v. United States, with the exception that in Jacobs v. United States the plaintiff in error relied on the seventh section of the bankruptcy statute of July, 1898, while here the plaintiff in error relies on section 860 of the Revised Statutes. The former concerns testimony given by the bankrupt, while the latter relates to evidence in any judicial proceeding from any witness.

Following certain observations made by us in Jacobs v. United States, we are met at the threshold by the claim that there is nothing here to show that this cross-examination was prejudicial; and the United States make the proposition that as to this the burden rests on the plaintiff in error to show affirmatively that it was. This is not the rule in the federal courts. The rule there is that, where a party persists in putting in testimony which was objected to, and which was erroneous, the error is fatal if the testimony was or might have been prejudicial. Columbia Railroad Company v. Hawthorne, 144 U. S. 202, 207, 208, 12 Sup. Ct. 591, 36 L. Ed. 405; National Biscuit Co. v. Nolan, 138 Fed. 6, 9, 10, 70 C. C. A. 436; Inman Bros. v. Lumber Co., 146 Fed. 449, 455, 76 C. C. A. 659. In the present case we must assume that it was prejudicial in view of the fact that the cross-examination was for the expressed purpose of testing Alkon's credibility, as to which there is a much larger margin for prejudice which the court cannot lay hold of than in the ordinary case of a mere attempt to contradict a witness on a specific point. This is fortified by the fact that, after this cross-examination, the United States in rebuttal put in the notes of the examination relating to the very matters about which the cross-examination occurred. As the United States had no purpose in using the notes except to contradict, and thus prejudice, the plaintiff in error, we are not called on to accept any theory that their attorney was not competent to determine that his conduct of the case in the particular referred to was beneficial to the United States, and therefore prejudicial to Alkon.

Section 860 of the Revised Statutes originated in the act of February 25, 1868, as follows:

"Chap. 13. An act for the protection in certain cases of persons making disclosures as parties, or testifying as witnesses.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That no answer or other pleading of any party, and no discovery, or evidence obtained by means of any judicial proceeding from any party or witness in this or any foreign country, shall be

given in evidence, or in any manner used against such party or witness, or his property or estate, in any court of the United States, or in any proceeding by or before any officer of the United States, in respect to any crime, or for the enforcement of any penalty or forfeiture by reason of any act or omission of such party or witness: Provided, that nothing in this act shall be construed to exempt any party or witness from prosecution and punishment for perjury committed by him in discovering or testifying as aforesaid.

"Sec. 2. And be it further enacted, That this act shall take effect from its passage, and shall apply to all pending proceedings, as well as to those hereafter instituted." Act Feb. 25, 1868, c. 13, 15 Stat. 37 [U. S. Comp. St. 1901, p. 661].

This act has not been under consideration by the Supreme Court, or by any Court of Appeals, so far as we can ascertain, except in Tucker v. United States, 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112, which does not assist us here. Wilson v. United States, 162 U. S. 613, 16 Sup. Ct. 895, 40 L. Ed. 1090, did not even allude to this statute, and it had no occasion to, because what was proven there by the United States was not given under oath, but was a mere prior statement, made freely and voluntarily before a commissioner. Prior to this statute the authorities were in some confusion on the point whether what was testified to by a person summoned to give evidence without anything being said by the court or by the witness with reference to his constitutional protection against incrimination could be used against him on a subsequent criminal proceeding. Greenleaf's Evidence, §§ 224, 226, 227; Roscoe's Criminal Evidence (12th Eng. Ed.) 44, 45, and especially Wilson v. United States, 162 U. S. 623, 16 Sup. Ct. 895, 40 L. Ed. 1090. Consequently this statute was needed; and, as it is remedial in its character, it is entitled to all the effect which its letter fairly calls for. So far as we can perceive, this case is within its letter, and we are unable to find any justification to support any efforts to withdraw the plaintiff in error from its protection. For this reason there must be a new trial.

There are other propositions submitted to us by the plaintiff in error; but, as none of them may come up on a new trial in the same form in which they present themselves now, we will not undertake the labor of solving them.

The judgment and verdict are set aside, and the case is remanded to the District Court for further proceedings in accordance with law.