RADIN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 10, 1911.)

No. 195.

1. CONSPIRACY (§ 47*)—PROSECUTION FOR—EVIDENCE—INFERENCES.

If the proof in a prosecution for conspiracy shows a previous meeting and a concert of action thereafter, each of the parties doing some act contributing to accomplish an unlawful purpose, a jury is justified in finding that they were conspiring together to accomplish that purpose.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

2. BANKRUPTCY (§ 485*)—CONCEALMENT OF PROPERTY BY BANKRUPT—INDICTMENT.

Under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), making it a crime to conspire to commit an offense against the United States, an indictment will lie for a conspiracy that a bankrupt shall knowingly and fraudulently conceal from his trustee property belonging to his estate, which is made a criminal offense by Bankr. Act July 1, 1898, c. 541, § 29b (1), 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), and such conspiracy may be entered into prior to the bankruptcy, in contemplation of bankruptcy; and defendants may be convicted, although it is not alleged nor proved that a trustee was actually appointed, where the evidence warrants a finding that the conspiracy was so successfully carried out that, when the bankruptcy proceedings were instituted, the bankrupt's property had all been removed beyond the jurisdiction of the court, so that the appointment of a trustee would have been a useless formality.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 485.*]

3. WITNESSES (§ 270*)—TRIAL—DISMISSAL OF WITNESS.

Where none of the testimony of a witness had been material to any issue, and he was being cross-examined on wholly irrelevant matters, it was within the right of the judge to dismiss him from the stand.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 926, 955–957; Dec. Dig. § 270.*]

4. CRIMINAL LAW (§ 554*)—EVIDENCE—TESTIMONY OF CODEFENDANTS.

Where defendants, charged with conspiracy, are being tried together, and they take the stand in their own behalf, their testimony is to be treated like that of any other witness, and may be considered for all purposes.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1255, 1256; Dec. Dig. § 554.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against Matthias Radin, Abraham Minsky, and others. From a judgment of conviction, defendants Radin and Minsky bring error. Affirmed.

Judgment was entered upon the verdict of a jury finding defendants above named guilty under section 5440 of the U. S. Revised Statutes (U. S. Comp. St. 1901, p. 3676) of conspiracy to conceal the property of H. Feinberg & Son, bankrupts, from their trustee under section 29b of the bankruptcy act. The defendants Herman Feinberg and Samuel Medlin were convicted and fined respectively $100 and $500; they have not appealed. Radin was sentenced to pay a fine of $1,000 and imprisonment for one year and Minsky to pay a fine of $500 and imprisonment for five months. The indictment against Isabelle Minsky, the wife of Abraham Minsky, was dismissed.

The indictment as found contained two counts, the first relating to a conspiracy alleged to have been formed on the 29th of October, 1908, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

second to a conspiracy formed on the 5th of November, 1908. At the close of the government's case it elected to go to the jury on the first count and the second count was dismissed as to all of the defendants. The trial commenced on the 7th of October, 1909, and was concluded on the 27th of the same month, occupying 16 court days. Two counsel appeared for the prosecution and five for the defendants.

Boothby, Baldwin & Hardy (Ernest E. Baldwin, of counsel), for plaintiffs in error.

Henry A. Wise, U. S. Atty., and Felix Frankfurter, Asst. U. S. Atty.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The first count of the indictment upon which Radin and Minsky (hereafter called defendants) were convicted charges, in substance, that on the 29th day of October, 1908, Herman Feinberg and his son Henry were doing business in furs and skins at 48 East Tenth street, New York, and also in London. England, under the firm name of H. Feinberg & Son, the father taking care of the New York branch and the son, Henry Feinberg, the London branch. That on said day Herman Feinberg, having a large quantity of furs and skins on the premises of the firm in New York, received information from London that the firm was in business difficulties and thereafter the defendants above named, together with Herman Feinberg, Samuel Medlin, Isabelle Minsky and others, contemplated, anticipated and planned that Herman Feinberg should commit an act of bankruptcy by removing from the firm's premises and concealing the said furs and skins with intent to defraud the firm's creditors. That the parties above named also contemplated, anticipated and planned that an involuntary petition in bankruptcy should be filed and the said Herman and Henry Feinberg should be adjudicated bankrupts and a trustee should be appointed of their estate in bankruptcy. The indictment further charges that the persons above named, in the circumstances as stated, wilfully and unlawfully conspired to commit an offense against the United States by corruptly and fraudulently agreeing that Herman Feinberg knowingly and fraudulently should conceal, while a bankrupt, from the trustee of his estate in bankruptcy, the said furs and skins and the money which might be received from a sale thereof together with other property and choses in action which belonged to the said firm.

The indictment further charges that to effect the object of the conspiracy the said conspirators, on the 30th of October and the 1st day of November, 1908, took part in the removal of furs and skins belonging to the said firm from 48 East Tenth street and shipped a portion thereof to Canada, well knowing that said goods would in due course belong to the estate in bankruptcy of the said H. Feinberg & Son. That in order to effect the object of the conspiracy certain of the conspirators removed books of account from the firm's place of business, that Herman Feinberg went to Jersey City on November 2nd and remained there for four weeks and that when the receiver in bankruptcy went to No. 48 East Tenth street to take possession of the bankrupts' property he was informed by one of the conspirators that

the furs and skins on the premises did not belong to the estate in bankruptcy.

The evidence tended to establish the truth of these allegations. We do not regard it necessary to review the testimony in detail because it can hardly be questioned that if the jury credited the witnesses called by the prosecution, they were entirely justified in finding that when it became evident that the firm of H. Feinberg & Son was in financial straits Radin and Minsky, with the other defendants, conspired together to prevent the firm's creditors from receiving any of the firm's property.

Bankruptcy was anticipated and means were taken to prevent any stock or accounts from coming into the control of the court in bankruptcy. Feinberg went into hiding in New Jersey where process could not reach him. The books were removed and the bookkeeper secreted herself. A fictitious company was created to which part of the stock was transferred and Minsky went to Canada as the agent of this company and sold goods there which had been shipped from New York. The accounts were assigned and collected by the conspirators, Radin receiving the assignment of several. In short, when the conspiracy had concluded its preliminary activities, the assets of the firm had substantially disappeared, nothing tangible was in sight; if the creditors recovered the property which had been transferred it could only be at the end of protracted litigation.

We do not, of course, intend to say that the testimony tending to show the conspiracy and the overt acts thereunder was not disputed. There were sharp conflicts on many of the essential issues, but the jury were justified in determining them in favor of the government.

The evidence was largely presumptive. The agreement was not reduced to writing and signed by the conspirators. It was not proved by direct oral evidence. From the nature of the case such proof was impossible. Conspiracies are not formed in that way. Conspirators do not go out upon the public highways and proclaim their intention. They accomplish their purpose by dark and sinister methods and must be judged by their acts.

[1] If the proof shows a previous meeting and a concert of action thereafter, each of the parties doing some act contributing to accomplish an unlawful purpose, a jury is justified in finding that they were conspiring together to accomplish that purpose. One who commits an unlawful act knowing that it is unlawful cannot be heard to say that he did it with innocent intent. The law presumes that every sane person intends the necessary consequences of his acts. If the jury believed that the defendants did the acts sworn to by the witnesses for the prosecution they were justified in drawing the conclusion that a conspiracy existed.

The trial judge, during a charge which stated impartially the conflicting evidence and the deductions to be drawn therefrom, asked the jury to answer the following question:

"Was there an agreement to do what was done with intent to conceal Feinberg's goods and property from such trustee in bankruptcy as might be appointed thereafter?"

The jury answered the question in the affirmative and as there is no reason for setting their verdict aside, we must consider the questions of law which will be discussed hereafter in the light of the facts as found, viz., that a conspiracy existed to conceal Feinberg's goods from a trustee who might be appointed in the future and that pursuant to such conspiracy they were so concealed.

[2] The most important question, and the one which has given us the greatest concern, arises under the first proposition argued by the defendants. It is asserted that:

"The indictment is defective in that there is no allegation that the alleged conspiracy was continued and persisted in after the appointment of a trustee."

It is true that there is no such averment and no proof was offered of the appointment of a trustee, indeed, at the argument, it was admitted, ore tenus, that no trustee was appointed. What exigency required the finding of this indictment at a time when it could not be alleged that a trustee had been appointed and that the conspiracy was a continuing one as to him, we, of course, do not know. It would seem, however, that the risk of having so perplexing a question in the record might easily have been avoided if the, apparently, simple precaution had been taken of procuring the appointment of a trustee before the finding of the indictment.

In approaching this question it is well to bear constantly in mind that this is an indictment under section 5440 of the Revised Statutes and not under section 29b of the bankruptcy act.

Section 5440 is as follows:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

Section 29b is as follows:

"A person shall be punished by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently (1) concealed while a bankrupt, or after his discharge, from his trustee, any of the property belonging to his estate in bankruptcy."

The words "any offense against the United States" in section 5440 have been construed to include any offense made a crime by the laws of the United States. It, therefore, makes it a crime for two or more persons to conspire that a bankrupt shall knowingly and fraudulently conceal from his trustee property belonging to his estate in bankruptcy.

Of course this conspiracy may be entered into prior to the bankruptcy; to hold otherwise would emasculate the statute and render it abortive in its application to the bankruptcy act. After the bankrupt's property is in the hands of the court it would be well nigh impossible to carry out such a conspiracy as is here shown. This court has held that the statute applies to a conspiracy formed in contemplation of bankruptcy. Cohen v. United States, 157 Fed. 651, 85 C. C. A. 113. See, also, Alkon v. United States, 163 Fed. 810, 90 C. C. A. 116.

An indictment charging such a conspiracy does not and cannot contain an averment that a trustee was appointed when none has been appointed. It is a familiar rule that the pleadings must conform to the facts and the proof to the pleadings. If the appointment of a trustee be an essential ingredient of the offense it is necessary to allege it, and this is impossible where none has been appointed. If, on the other hand, a trustee be subsequently appointed, proof of the fact might successfully be prevented on the ground that nothing of the kind is alleged. What, then, is to be done with a case where the proof shows that a conspiracy was formed before bankruptcy, but in contemplation thereof, and its members were so successful in doing acts to effect the object of the conspiracy that nothing of the bankrupt's estate is left for his creditors?

No reason exists for a trustee in such circumstances. He might be appointed, it is true, but it would be a vain act; as well might an administrator be appointed for a deceased person who has left nothing but debts. From a practical viewpoint the existence of the trustee in no way affects the guilt or innocence of the conspirators. His appointment is not an ingredient of the crime which relates to a conspiracy to conceal the goods so effectually that no trustee will ever be needed.

If the contention of the defendants be correct we have the strange anomaly of defendants who have entered into a conspiracy to enable the bankrupt to conceal his property and who have succeeded so completely that not a vestige of his property remains, going scot free; and other defendants, who have entered into an identical conspiracy, being imprisoned, for the reason that they failed to conceal the bankrupt's entire property, thus making the appointment of a trustee necessary.

The government is not seeking to punish Feinberg for concealing, while a bankrupt, property belonging to his estate from his trustee, but is seeking to punish the defendants for conspiring that he should conceal his property from his trustee and thereby defraud his creditors. This question was decided in accordance with the contention of the government in U. S. v. Cohen (C. C.) 142 Fed. 983, where Judge Holt says:

"The true test is: Could a conviction be had if no bankruptcy proceedings were ever begun? I think it could if in addition to the organization of a conspiracy any of the parties to it did any act to effect the object of the conspiracy."

As the indictment in that case alleged the appointment of a trustee this court did not deem it necessary to pass upon the proposition above stated.

We are, however, of the opinion that it was not essential in the case at bar that the indictment should allege, or the proof show, that a trustee was actually appointed. This proposition is, we think, established by inevitable deductions from decided cases. In the Alkon Case, supra, the indictment charged a conspiracy entered into between the defendants on May 1, 1906, to conceal the goods purchased by one

of them and stored and hidden by the other. The indictment alleged that after this was done the purchaser was to file a fraudulent petition in bankruptcy and that after the adjudication and appointment of a trustee he was to conceal from the trustee the property so purchased and hidden by the conspirators. The indictment charged further that on November 16, 1906, the purchaser, in pursuance of the conspiracy, filed a fraudulent petition in bankruptcy. There was there, as here, no allegation of existing bankruptcy at the date of the conspiracy, and, of course, there could not be such an allegation as the bankruptcy did not occur until more than six months thereafter. The court said of the conspiracy:

"It included an intent to continue the concealment until after Barush became a bankrupt, and it was like all conspiracies in that it related to something in futuro. The plaintiff in error cites no case in support of his position; and in common with the Circuit Court of Appeals for the Second Circuit, in Cohen v. United States, 157 Fed. 651, 654, 83 C. C. A. 113, it does not occur to us that there is anything in principle or on authority which invalidates the indictment on this account."

This decision was followed in U. S. v. Young-Holland Co. (C. C.) 170 Fed. 110.

The scope of the conspiracy section is clearly explained in Williamson v. U. S., 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, where the indictment charged a conspiracy to suborn perjury. The court says:

"But the proposition wholly fails to give effect to the provisions of the conspiracy statute (Rev. Stat. § 5440), which clearly renders it criminal for two or more persons to conspire to commit any offense against the United States, provided only that one or more of the parties to the conspiracy do an act towards effecting the object of the conspiracy. In other words, although it be conceded, merely for the sake of argument, that an attempt by one person to suborn another to commit perjury may not be punishable under the criminal laws of the United States, it does not follow that a conspiracy by two or more persons to procure the commission of perjury, which embraces an unsuccessful attempt, is not a crime punishable as above stated. The conspiracy is the offense which the statute defines without reference to whether the crime which the conspirators have conspired to commit is consummated."

The case of Reg v. Banks, 12 Cox, C. C. 393, is cited by both parties but seems to us to aid the contention of the government. The court sustained an indictment charging a conspiracy to murder a child not born at the date of the conspiracy. The court told the jury that it was for them to say whether an agreement actually existed between Leah and Elizabeth Banks to destroy the child when born, and if they found that an agreement actually existed either before or at the time of the birth to destroy the child "somehow," it was not necessary that the means of destruction should have been agreed upon. As to the third count which stated in detail the facts regarding the conspiracy the court ruled:

"That it showed an object in the mind of each prisoner sufficiently proximate to the subject of the conspiracy; and that the overt acts charged not being a material part of the count, it was unnecessary to consider their effect."

In the Banks Case the conspiracy was to murder a human being not then in existence. In the case at bar the conspiracy was to defraud a trustee not then in existence. It is argued that:

"The child would, in due course of nature be born within a short time and therefore capable of being killed pursuant to the agreement."

But it might with equal plausibility be argued here that:

"The trustee would in due course of bankruptcy be appointed and therefore capable of being cheated pursuant to the agreement."

When the conspiracy was formed in the Banks Case the child had not been born, might never be born or might be born dead. The object of the conspiracy was not possible of attainment when the conspiracy was entered into, it might never be possible. The carrying out of the crime depended upon a contingent future event. If that event happened the crime might be committed, otherwise not. Nevertheless as the defendants conspired to commit a crime which might be possible in the future though impossible at the time of the conspiracy, the court held that they could be punished not for murder but for the conspiracy to commit murder.

In Commonwealth v. Rogers, 181 Mass. 184, 63 N. E. 421, it was held that a conspiracy to procure persons to vote at a caucus who were not entitled to vote there, might be completed before any of the persons had been agreed upon and that the particular nature of the disqualification of said persons was not material and need not be alleged or proved. At page 189 of 181 Mass., and page 424, of 63 N. E., Chief Justice Holmes—now Mr. Justice Holmes—says:

"It is said that the first count is bad because it does not show how the persons whom the defendants conspired to procure to vote were not entitled to vote. The allegation embraces persons unknown so that the requirement is impossible, and this illustrates the fact that such a conspiracy might be completed before any of the persons to be procured had been agreed upon. But it follows from that fact that the particular nature of the disqualification is in no way material to the offense."

It is true that the precise point here in issue has not, so far as we are informed, been passed upon except by Judge Holt in the Cohen Case and it may be urged, strictly speaking, that what was there said was obiter. We think, however, that the contention of the government is sustained by the reasoning of the cases cited and the principles which govern the administration of the criminal law. In brief and plain language, the crime charged is conspiracy to defraud the bankrupt's creditors by concealing his property so that his trustee cannot reach it. When that conspiracy was entered into and the bankrupt's property was hidden and sent out of the country so that a trustee could not reach it the crime was consummated. We see no reason for giving to the law a construction so strained and technical as to permit the perpetrators of such an iniquity to escape.

If we understand the second point urged by the defendants it is that the indictment is defective because it originally contained two counts charging two separate conspiracies entered into on different dates and that as the "other persons unknown" with whom the defend-

ants conspired are not alleged to be the same in each count they may have been different persons and, therefore, there was no mutuality of defendants in the two counts.

We do not consider it necessary to discuss this question because it is academic. The second count was dismissed as to all of the defendants and the case is before us solely on the first count. There is no pretense that testimony was introduced under the second count that was not equally competent under the first count. In legal effect it is precisely as if the indictment, as found, contained but one count and it is idle to speculate upon what might be the result if it now contained two counts.

[3] Prejudicial error is asserted based upon the action of the court in dismissing the witness Kaiffe Jaffe who was called by the defendant Radin to establish an alibi. He testified that on Sunday, November 1st, he saw Radin a little after 9 o'clock and was with him "until after 10 o'clock; more than an hour." This was intended to contradict the testimony for the prosecution that Radin was at Feinberg's store on that Sunday morning at about 11:30. Jaffe's testimony did not prove an alibi and he might have been safely dismissed at this point but, apparently, the temptation to cross-examine was too strong to be resisted. He was first cross-examined by the United States Attorney and then by Mr. Levy, who appears on the record as counsel for Feinberg and Isabelle Minsky, who do not appeal. It was during Mr. Levy's examination that the ruling complained of was made. The examination drifted away to inconsequential and immaterial matters and at the time in question counsel was endeavoring to ascertain the exact date when Jaffe was admitted to the bar. The following is what occurred:

"Q. Well, the great event of your life was your admission to the bar, was it not? A. Yes, and it was in December.

"Q. And can't you tell me that date? A. No.

"Q. Why can't you?

"The Court: Mr. Levy, you need not proceed. I do not think this witness needs further examination. Any member of the bar whose professional life is less than a year old who does not know the date when he was admitted to practice in his chosen profession may leave the witness stand.

"Mr. Baldwin: I simply want to note an objection and exception on the part of the defendant Radin.

"(The witness left the stand.)"

While we might wish that the action of the court had been less abrupt we cannot think that any prejudicial error was committed for the following reasons:

First, it was evident that the time of the court and jury was being wasted in an irrelevant and useless inquiry. It is the right and duty of the trial judge to confine the testimony to the issues involved and to limit cross-examination when it is persisted in improperly. The court's remarks were tantamount to saying:

"It seems to me that this witness has been interrogated sufficiently."

Second, the counsel for Radin had established the fact that Radin was in a barber shop an hour and a half before it was alleged he was at Feinberg's store and had turned the witness over for cross-examina-

tion and the United States Attorney had finished his examination. The ruling of the court occurred after every relevant inquiry had been exhausted and the counsel for Radin did not suggest that he had any further questions to ask. Indeed, it would seem that it was for the interest of his client that the examination should be terminated as quickly as possible.

Third, the testimony of Jaffe did not cover the time when Radin was alleged to have been in Feinberg's store and as the action of the court could only affect this testimony we do not see how the defendant Radin is injured. If the court had said directly that Jaffe had not established an alibi he would have been well within his privilege as a federal judge.

·[4] We see no error in permitting the counsel for Feinberg and Medlin to cross-examine the defendant Radin or in the court's refusal to instruct the jury that they could not consider the testimony of any of the defendants for or against any other defendant. These conspirators were properly tried together, they had a right to take the stand in their own behalf and having done so they must be treated as other witnesses are treated. Benson v. United States, 146 U. S. 325, 13 Sup. Ct. 60, 36 L. Ed. 991.

Other exceptions have been argued but we do not deem it necessary to discuss them: it is sufficient to say that none relates in our judgment to a reversible error. Considering the complicated character of the issues presented, the mass of testimony and the time consumed, the record is unusually free from exceptions presenting debatable questions.

The judgment is affirmed.