COHEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 7, 1907.)

No. 63.

1. CONSPIRACY—CONSPIRACY TO COMMIT OFFENSE AGAINST UNITED STATES—
   CONCEALMENT OF PROPERTY BY BANKRUPT.
   A bankrupt corporation may commit the criminal offense of knowingly
   or fraudulently concealing its property from its trustee defined and made
   punishable by Bankr. Act July 1, 1898, c. 541, § 29b (1), 30 Stat. 554 [U.
   S. Comp. St. 1901, p. 3433], and individuals who conspire to cause a cor-
   poration to commit such offense are indictable for the conspiracy under
   Rev. St. § 5440, as amended by Act May 17, 1879, c. 8, 21 Stat. 4 [U. S.
   Comp. St. 1901, p. 3676], and it is immaterial that the corporation is not
   or cannot be indicted as one of the conspirators.

2. SAME—INDICTMENT.
   An indictment for conspiracy that a corporation as a bankrupt should
   fraudulently conceal property from its trustee in violation of Bankr. Act
   July 1, 1898, c. 541, § 29b (1), 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433],
   is not insufficient because it charges that the property was removed and
   concealed prior to the bankruptcy, where it also avers that, with the con-
   sent and connivance of defendants, the concealment was continued after
   the bankruptcy and the appointment of a trustee, and the property was
   not scheduled by the bankrupt.

3. CRIMINAL LAW—TRIAL—RECEPTION OF EVIDENCE.
   On the trial of an indictment for conspiracy, the admission in evidence
   of declarations made by one of the alleged conspirators before proof of
   the conspiracy was a matter of order of proof within the discretion of the
   court, and was not prejudicial where such proof was subsequently made by
   evidence other than the declarations.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §
   1609; vol. 15, Criminal Law, § 3138.]

4. SAME—SUFFICIENCY OF EVIDENCE.
   A charge of conspiracy for the concealment of property by a bankrupt,
   in violation of Bankr. Act July 1, 1898, c. 541, § 29b (1), 30 Stat. 554
   [U. S. Comp. St. 1901, p. 3433], may be supported by evidence that the
   property was sold under a chattel mortgage given by the bankrupt prior
   to the bankruptcy, where it is shown that such mortgage and sale were
   merely colorable, and that the property, in fact, remained that of the
   bankrupt.

5. CRIMINAL LAW—EVIDENCE—EVIDENCE RENDERED ADMISSIBLE BY CROSS-EX-
   AMINATION.
   Permitting the prosecution to introduce in evidence a statement signed
   by one of its witnesses *held* not prejudicial error, although it was not
   admissible as evidence on the issues, where the witness was first interro-
   gated in regard to making the statement on his cross-examination.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §
   3137.]

In Error to the Circuit Court of the United States for the Southern
District of New York.

For opinion below on demurrer to indictment, see 142 Fed. 983.

This cause comes here upon a writ of error to review a judgment
of the Circuit Court for the Southern District of New York, entered
upon a verdict convicting the defendants under section 5440 of the
Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3676]
of a conspiracy to violate subdivision "b" of section 29 of the bank-

ruptcy act of July 1, 1898 (30 Stat. 554, c. 541 [U. S. Comp. St. 1901, p. 3433]).

Marx & Byrne (M. Feltenstein, on the brief), for plaintiffs in error.

Henry L. Stimson, U. S. Atty., and G. W. Bristol, Asst. U. S. Atty. (Julius Henry Cohen, of counsel), for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge. The indictment embraced three counts; but, as the defendants were convicted upon the first count only, it is unnecessary to examine particularly the other counts. This count charged the said defendants, together with Albert Friedman (against whom the indictment was dismissed), with conspiring to commit an offense against the United States, in and by corruptly and fraudulently agreeing together in anticipation of the involuntary bankruptcy of the "American Wire & Steel Bed Company," a domestic corporation, to be brought about and accomplished by the said Simon L. Simpson, with the knowledge and connivance of the said other conspirators, to conceal from the trustee in bankruptcy of the said corporation to be thereafter appointed certain property hereinafter mentioned belonging to the estate in bankruptcy of the said 'American Wire & Steel Bed Company.'" It is then alleged that, as a part of the scheme and conspiracy, it was the purpose of the conspirators to cause said corporation, of which defendant Simpson was president, general manager, and majority stockholder, to commit acts of bankruptcy in order to force the filing of a petition in bankruptcy against it, and then to make no opposition to the petition and consent to an adjudication in bankruptcy; that a petition in involuntary bankruptcy was duly filed upon the ground that the corporation was insolvent and had fraudulently concealed its property of the value of $7,000; that defendant Simpson, as president and manager and stockholder of said corporation, consented to the appointment of a receiver, and at his instance said corporation was adjudged a bankrupt, and that afterwards a trustee in bankruptcy was appointed. It is further alleged that, to effect the object of said conspiracy, defendant Simpson caused the removal and concealment of certain horses and wagons belonging to the corporation, that he omitted said property from the bankruptcy schedules of said corporation signed by him as its president, and that said property was never turned over to the trustee when appointed, but was concealed from him by the procurement of the defendant Simpson, with the knowledge, consent, and connivance of the other conspirators. To this first count a demurrer was interposed which was overruled by the trial judge, and the first point in the appellant's brief raises the question whether there was error in such action.

The defendants contend that this count charges no offense against the laws of the United States for two reasons: (1) The defendants could not have committed the offense prohibited by the bankruptcy act, and therefore could not be found guilty of conspiracy to commit it. (2) The defendants are charged with conspiring to conceal property in contemplation of bankruptcy, which latter act is not an offense; combining to do an act which is not criminal is not a criminal conspiracy.

Section 5440 of the Revised Statutes as amended by Act May 17, 1879, c. 8, 21 Stat. 4 [U. S. Comp. St. 1901, p. 3676], under which this indictment was found, reads as follows:

"If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court."

Subdivision "B" of section 29 of the bankruptcy act of July 1, 1898 (30 Stat. 554, c. 541 [U. S. Comp. St. 1901, p. 3433]), which the defendants are charged with conspiring to violate, reads as follows:

"A person shall be punished by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed while a bankrupt, or after his discharge, from his trustee, any of the property belonging to his estate in bankruptcy."

The defendants' first contention is that, as no one of them was the bankrupt, no one of them could have violated this provision of the act, and that, if they could not have committed the principal offense, they could not conspire to commit it. In support of this contention they cite the cases of Field v. United States, 137 Fed. 6, 69 C. C. A. 568, and United States v. Lake (D. C.) 129 Fed. 499. In the Field Case the Circuit Court of Appeals for the Eighth Circuit held that an officer of a bankrupt corporation was not liable to punishment under section 29b of the bankruptcy law for having fraudulently concealed the property of a corporation from its trustee—that the present or past bankruptcy of the person accused was an indispensable element of the offense. In the Lake Case the District Court for the Eastern District of Arkansas held that this section of the bankruptcy act must be strictly construed, and does not include officers of a corporation declared a bankrupt. The defendants also cite United States v. Britton, 108 U. S. 192, 2 Sup. Ct. 525, 27 L. Ed. 703, which held that where an act, if committed, would not amount to a crime under some law of the United States, an agreement to perpetrate it could not be punished under the conspiracy section. We are not called upon to dispute the legal principles laid down in these decisions. The difficulty with them in the present case is that they are not applicable. The defendants are not charged with concealing assets as officers of a bankrupt corporation. They are not charged with conspiring that the officers of a bankrupt corporation should conceal its assets. They are charged with conspiring that a bankrupt corporation should conceal its assets. These propositions show the sufficiency of this charge: (1) The corporation—the bankrupt—could violate the provision against fraudulently concealing its assets. Its act would be criminal notwithstanding its corporate character would prevent its punishment. See United States v. Van Schaick (C. C.) 134 Fed. 592. (2) Even if the corporation alone could violate the bankruptcy act, the defendants could conspire that the corporation should violate it, and so be guilty of conspiracy. Although a bankrupt alone can be indicted for violating the bankruptcy act, persons combining with him to violate it may be guilty of conspiracy. United States v. Bayer,

4, Dill. 407, Fed. Cas. No. 14,547. It is immaterial that the corporation was not indicted for conspiracy, or whether it could be indicted. Failure to prosecute all conspirators does not prevent the prosecution of a part of them. United States v. Miller, 3 Hughes, 553, Fed. Cas. No. 15,774; People v. Richards, 67 Cal. 412, 7 Pac. 828, 56 Am. Rep. 716; People v. Mather, 4 Wend. (N. Y.) 229, 21 Am. Dec. 122. That a corporation may be a conspirator, see Buffalo Lubricating Oil Co. v. Standard Oil Co., 42 Hun (N. Y.) 153; Id., 106 N. Y. 669, 12 N. E. 826; Dorsey Machine Co. v. McCaffrey, 139 Ind. 545, 38 N. E. 208, 47 Am. St. Rep. 290; West Va. Trans. Co. v. Standard Oil Co., 50 W. Va. 611, 40 S. E. 591, 56 L. R. A. 804, 88 Am. St. Rep. 895. It follows, therefore, that the indictment was not insufficient because it appeared that none of the defendants was the bankrupt.

The defendants' second objection is that Congress has not made it criminal to conceal property in contemplation of bankruptcy, and that the first count merely charges concealment of this character— that it alleges only the commission of acts before proceedings in bankruptcy were instituted, and before a trustee was appointed. We think, however, that the indictment is not so limited in scope as claimed by the defendants. It is true that it charges the removal and concealment of certain property before the appointment of a trustee; but it further alleges that a trustee was subsequently appointed, and that the property was never turned over to him, but was concealed from him by the procurement of defendant Simpson with the knowledge, consent, and connivance of the other conspirators. The case presented by the indictment is therefore one of continued concealment, and we are not called upon to consider whether there is an omission in the bankruptcy law in respect of the disposition of property in contemplation of bankruptcy. If a bankrupt conceal his property before the appointment of a trustee and continue to conceal it after the appointment, he violates the bankruptcy act, and a conspiracy that he shall do so violates the conspiracy statute. This objection to the overruling of the demurrer, like the first, is unfounded. The demurrer was properly overruled.

The defendants' second point is, in substance, that the trial court erred in refusing to instruct the jury to acquit and in charging that if the chattel mortgage executed by the corporation, the American Wire & Steel Bed Company (under which the horses and wagons mentioned in the indictment were claimed to have been sold), was a colorable thing, then the title to the property continued in such corporation. The defendants' third point is that there was not sufficient evidence to send the case to the jury against any of the defendants. The fourth point is that there certainly was no evidence to send the case to the jury against the defendant Mann. The sixth point relates to the admission of testimony concerning defendant Simpson's declarations regarding defendant Mann. We may properly consider these points together. After carefully going over the testimony, we are of the opinion that there was ample evidence to warrant the jury in finding that there was a conspiracy among the defendants to remove, conceal, and keep concealed the property of the aforesaid corporation from its trustee in bankruptcy. The only ques-

tion is as to the defendant Mann. It appears, however, that the affairs of defendant Simpson, who controlled the corporation, and defendant Cohen, his brother-in-law, who likewise failed, were dovetailed together; that the lease of Cohen's store was transferred to Mann and the accounts of the corporation assigned to Mann; that Mann, who was a nonresident, was in New York at the time of the failures, and that he helped to ship Cohen's goods out of the jurisdiction, and afterwards took charge of the business at the Cohen place. These facts, with others, connected Mann with the conspiracy. In addition, a witness testified that Simpson stated to him that Mann was his cousin and was coming down from Boston to help him out in the failure; that the accounts were to be assigned to Mann, and collected and turned over to Simpson. All this evidence was sufficient to connect Mann with the conspiracy, and, if it were shown, it was not necessary to prove his connection with the particular overt act—the removal and concealment of the horses and wagons. But it is urged that the evidence of Simpson's declarations was received before there was any proof of the conspiracy, and it is claimed that declarations of an alleged conspirator are not admissible to prove the existence of a conspiracy. We are not disposed to question this last claim. But we are of the opinion that there was proof of the conspiracy in this case other than Simpson's declarations, and the mere fact that all the evidence thereof was not in at the time the declarations were testified to did not render it erroneous to receive them. It was a question of the order of proof and within the discretion of the trial court.

It is also urged under the points we are now considering that the court should have instructed the jury to acquit because the overt act charged in the first count had not been proved. The defendants contend that it was necessary to prove that there was a concealment of the horses and trucks from the trustee in bankruptcy; that a fraudulent conveyance is not a concealment; that, in case of such conveyance, the trustee must take proceedings to have it set aside; and that until set aside the title is in the transferee. It appears from the record that the horses and wagons were in form sold a short time before the failure in the alleged foreclosure of an alleged chattel mortgage from the corporation to one Wallace. Applying the principles just stated to these facts, the defendants urge that between the parties to the mortgage the title had passed from the corporation to the mortgagee, and therefore that the bankrupt did not conceal the property for the reason that it had no legal title thereto. But we are not called upon to consider questions of title under chattel mortgages and foreclosures. If the jury found, as they evidently did, that the whole thing—the mortgage and the foreclosure—was a pretense and sham, then there was no mortgage, no foreclosure, and no passing of title.

It is claimed by the defendants under the fifth point in their brief that the trial court erred in refusing to permit counsel to question the jurors as to their competency and implied bias. An examination of the record, however, leads us to the conclusion that the trial court in no way abused the discretion reposed in it in this regard. In fact, all the record shows is that certain questions were excluded. How

far counsel were permitted to go in other questions does not appear.

In the seventh point the defendants contend that there was error in the admission of the testimony of the witness Bonner as to defendant Simpson's actions in the matter of the appointment of the trustee and afterwards. We think, however, that this testimony was admissible as tending to establish Simpson's participation in the conspiracy charged. It was not very direct, but was not inadmissible.

The eighth and ninth points of the appellant's brief have been considered in the examination of preceding points.

In the tenth point it is claimed that the court erred in receiving in evidence a statement of occurrences signed by a witness for the prosecution—one Leavitt. Of course, this statement was not admissible for the purpose of bolstering up the witness' testimony. It was not offered for such purpose. Leavitt had testified for the government, and on cross-examination was asked by defendants' counsel whether he had signed a statement for the prosecution and been paid a check when he did so. The prosecution then offered the statement in evidence, and it was received. It thus appears that the defendant's counsel opened up the inquiry concerning this statement. Having done so, we think it was not prejudicial error for the court to admit the statement in evidence.

Point 11 is not well founded. The notes objected to were admissible for what they were worth. One of them showed a connection between Cohen and the American Wire & Steel Bed Company. Both showed something as to the financial condition of the corporation. There was certainly no prejudicial error in receiving them.

There is no error in the judgment; and it is affirmed.