## KAUFMAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 17, 1914.)

### No. 184.

1. BANKRUPTCY (§ 494*)—CONCEALMENT ·OF ASSETS—NATURE OF OFFENSE.

Bankr. Act July 1, 1898, c. 541, § 29b, 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), provides that a person shall be punished by imprisonment for not to exceed two years on conviction of having knowingly and fraudulently concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy. Cr. Code (Act March 4, 1909, c. 321, 35 Stat. 1152 [U. S. Comp. St. Supp. 1911, p. 1686]) § 332, declares that whoever commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, demands, induces, or procures its commission, is a principal, and section 335 provides that all offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. *Held*, that an indictment charging the president and manager of a bankrupt corporation

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with knowingly and fraudulently aiding and abetting the concealment of its assets charged a felony.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 911; Dec. Dig. § 494.*]

2. BANKRUPTCY (§ 492*)—OFFENSES—AIDERS AND ABETTORS—CONVICTION OF PRINCIPAL.

Under Cr. Code (Act March 4, 1909, c. 321, 35 Stat. 1152 [U. S. Comp. St. Supp. 1911, p. 1686]) § 332, providing that all aiders or abettors of any crime are principals, where defendant was charged with knowingly and fraudulently aiding and abetting a bankrupt corporation, of which he was president and general manager, to conceal its assets from its trustee, it was not necessary that the corporation should be first convicted before the conviction of accused.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 492.*]

3. BANKRUPTCY (§ 492*)—OFFENSES—CONCEALMENT OF ASSETS—LIABILITY OF CORPORATION.

A bankrupt corporation is capable of committing the offense of knowingly and fraudulently concealing its property from its trustee in violation of Bankr. Act July 1, 1898, c. 541, § 29b, 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 492.*]

4. BANKRUPTCY (§ 492*)—CONCEALMENT OF ASSETS.

Bankr. Act July 1, 1898, c. 541, § 29b, 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), providing that a person shall be punished, etc., on conviction of the offense of having knowingly and fraudulently concealed, while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy, applies only to one who has been adjudicated a bankrupt, and not to one guilty of aiding and abetting the bankrupt in knowingly and fraudulently concealing its assets.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 492.*]

5. BANKRUPTCY (§ 485*)—OFFENSES—"CONCEALMENT" OF ASSETS.

Where an alleged concealment of assets of a bankrupt corporation began before the appointment of a trustee and continued after such appointment, it constituted a concealment from him, within Bankr. Act July 1, 1898, c. 541, § 29b, 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433), making such concealment a felony.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 906, 908; Dec. Dig. § 485.*

For other definitions, see Words and Phrases, vol. 2, pp. 1377–1384.]

6. WITNESSES (§ 201*)—PRIVILEGE—ATTORNEY.

Where accused was charged with aiding and abetting a bankrupt corporation, of which he was president and manager, to conceal its assets from its trustee, evidence of defendant's attorney that he was retained by defendant as attorney for the corporation, and also to represent defendant individually, was not objectionable as privileged.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 754, 755; Dec. Dig. § 201.*]

7. CRIMINAL LAW (§ 829*)—INSTRUCTIONS—REASONABLE DOUBT.

Where the court's charge was explicit and fair, and covered all the aspects of the case requiring that all the facts must be proved against defendant beyond a reasonable doubt, and defined reasonable doubt in the language of defendant's counsel, it was not error to refuse a charge that if on the whole case the jury should find that the evidence was evenly balanced, or they were unable to determine where the truth lay, that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

created a reasonable doubt, and defendant would be entitled to an acquittal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

8. BANKRUPTCY (§ 495*)—CONCEALMENT OF ASSETS—EVIDENCE.

In a prosecution of the president and manager of a bankrupt corporation for aiding and abetting the concealment of its assets from its trustee, the fact that there was no evidence that defendant was holding the moneys under an agreement with the bankrupt to do with them what it requested did not impair the government's case.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 912; Dec. Dig. § 495.*]

9. BANKRUPTCY (§ 495*)—ASSETS—CONCEALMENT FROM TRUSTEE—EVIDENCE.

In a prosecution of the president and manager of a bankrupt corporation for aiding and abetting the concealment of its assets from its trustee, evidence *held* to sustain a conviction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 912; Dec. Dig. § 495.*]

In Error to the District Court of the United States for the Southern District of New York.

Henry Kaufman was convicted of aiding and abetting the Daisy Shirt Company, a bankrupt corporation, to conceal its assets from its trustee, and he brings error. Affirmed.

The plaintiff in error, Henry Kaufman, hereinafter referred to as the "defendant," was president of the Daisy Shirt Company, a corporation organized under the laws of the state of New York, and was in charge of the company. This company was engaged in the manufacture and sale of shirts and had its principal place of business in the city of New York. On November 5, 1910, an involuntary petition in bankruptcy was filed against the company and it was duly adjudicated a bankrupt. The evidence discloses that between October 24 and November 2, 1910, Kaufman assigned a large portion of the outstanding accounts of the company to the Federal Finance Company for $2,718.15. He assigned other accounts to one Silverstone for $900. He sold to other parties a large quantity of merchandise belonging to the company receiving altogether $12,653.72. A large part of this was paid to him in cash and some of it in checks which he cashed. On or about November 3d, a few days before the company was thrown into bankruptcy, Kaufman left New York for California, stopping at Montreal on his way where he remained a month. He was arrested in California and brought from there to New York to answer an indictment charging him with aiding and abetting a bankrupt corporation to conceal its assets. He never turned over any of the money he had received as hereinbefore set forth. The defendant undertook to account for the money which he had received before leaving for California by claiming that he had paid certain specified amounts to his wife, his sister, his brother, his father, his mother-in-law, and to certain other persons including $495 to his attorney.

The defendant's testimony was that he had invested $16,000 in the business, which was inadequate for the demands made upon it; that it became necessary to borrow money, and the defendant secured a loan of $5,000 from the Madison Trust Company, which he put into the treasury of the corporation; that he raised $1,200 on his mother-in-law's jewels, which sum was deposited in the bank account of the corporation, as well as $875 on life insurance belonging to her, likewise paid to the corporation; that his sister loaned the company $2,400 in various amounts; that his father paid $2,500 to avoid foreclosure of mortgage assigned to the Franklin Trust Company as security for its loan to the corporation; that he pledged his wife's jewels with the Provident Loan Association for $1,600, which went into the treasury of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporation; that he borrowed $400 from one Gutkin. He testified that things were going very badly with the corporation and that great pressure was brought to bear on him to pay the debts thus incurred; that he yielded to these demands and paid from the moneys received upon the assignment of the outstanding accounts and sale of merchandise sums aggregating $11,438, part of which went to merchandise creditors also. The other witnesses for the defense corroborated his statements to some extent.

Aaron William Levy, of New York City, for plaintiff in error.

H. Snowden Marshall, U. S. Atty., and Roger B. Wood, Asst. U. S. Atty., both of New York City.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The plaintiff in error who was the defendant below has been convicted of. the crime of having aided and abetted the Daisy Shirt Company in concealing its assets in violation of section 29b of the Bankruptcy Act. He was not charged with having concealed the assets of the company from the trustee in bankruptcy. The indictment charged the Daisy Shirt Company with having concealed its assets from its duly qualified trustee in bankruptcy to an amount exceeding $5,000, and further charged that the defendant "under the circumstances aforesaid did knowingly and fraudulently cause, procure, aid and abet, the Daisy Shirt Company while the said Daisy Shirt Company was a bankrupt as aforesaid, knowingly and fraudulently to conceal in the manner and form aforesaid, from William P. Myhan, the duly qualified trustee in bankruptcy of the said Daisy Shirt Company, the aforesaid sums of money and the aforesaid property belonging to the estate in bankruptcy of the said Daisy Shirt Company."

The provision of section 29b of the Bankruptcy Act reads as follows:

"A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy."

The Criminal Code in section 332 provides that:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The federal courts have such criminal jurisdiction only as is given by act of Congress. Jones v. United States, 137 U. S. 202–211, 11 Sup. Ct. 80, 34 L. Ed. 691. The defendant was indicted as a principal under section 332 of the Criminal Code, and the case was tried on that theory.

[1, 2] The offense of concealing the assets from the trustee in bankruptcy is a felony as one committing the offense may be punished by imprisonment for more than one year. Section 335 of the Penal Laws, Act March 4, 1909. In the case of felonies the common law recognized the distinction of principals and accessories, a distinction it refused to apply to persons participating in treason and in misdemeanors. In the case of treason and misdemeanors all persons

who were guilty at all were punishable as principals and indictable as such. In the case of felonies one who aided and abetted the principal, but was absent when the crime was committed, or who after the crime was committed assisted the perpetrator, was simply an accessory. And according to the common law an accessory could not be tried before the conviction of the principal. But under section 332 of the Criminal Code of the United States all abettors of any crime are made principals. It is not necessary, therefore, that a bankrupt corporation should first be convicted before bringing to trial one charged with aiding and abetting in the concealment of its assets from a trustee in bankruptcy.

[3] It is undoubtedly the case that decisions and dicta can be found denying that a corporation can be indicted. Lord Holt is reported as having said that "a corporation is not indictable, but the particular members of it are." Anonymous, 12 Mod. 559. But it is a well-established principle of modern jurisprudence that an indictment will lie against a corporation, although there are some crimes, as treason, or felony, or breach of the peace, in respect of which it is agreed that an indictment could not be maintained against it, and it has been held that where a statute prescribes fine and imprisonment it is not applicable to a corporation because a corporation cannot be imprisoned. United States v. Braun & Fitts (D. C.) 158 Fed. 456. But in Cohen v. United States, 157 Fed. 651, 85 C. C. A. 113 (1907), this court decided that a bankrupt corporation was capable of committing the criminal offense of knowingly or fraudulently concealing its property from its trustee defined and made punishable by the Bankruptcy Act, and that persons who conspire to cause a corporation to commit such an offense are indictable for the conspiracy, and that it is immaterial that the corporation is not or cannot be indicted as one of the conspirators. We know of no reason why we should not adhere to the opinion we then expressed. We are compelled therefore to disregard the defendant's contention that, if the corporation could not be convicted of the offense described in section 29b of the Bankruptcy Act, he could not be convicted of aiding and abetting in the commission of such an offense. There is no distinction in principle between the Cohen Case, supra, and the case at bar. The fact that in the Cohen Case the indictment was for conspiracy under section 5440 of the Revised Statutes, while in this case the indictment is based on a concealment of assets, is a distinction without a difference so far as the principle involved is concerned.

[4] It may be conceded that defendant could not be convicted under section 29b of the Bankruptcy Act. That section applies only to one who has "knowingly or fraudulently concealed while a bankrupt or after his discharge." As the defendant is not alleged ever to have been a bankrupt the section is without application to him. It was held in Field v. United States, 137 Fed. 6, 69 C. C. A. 568, that the present or past bankruptcy of the person accused was an indispensable element of the offense created by that section. The defendant, however, is mistaken in supposing that the principle announced in the Field Case is so far applicable to his case as to require this court to

set aside his conviction. He loses sight of the fact that his own conviction is not under section 29b of the Bankruptcy Act which was under discussion in the Field Case, but is under section 332 of the Criminal Code.

[5] The offense with which the defendant is charged is that he aided and abetted the Daisy Shirt Company while the said company was a bankrupt knowingly and fraudulently to conceal from the duly qualified trustee property belonging to the estate in bankruptcy. The concealment must be a concealment from the trustee. In re Adams (D. C.) 171 Fed. 599. In the case at bar the funds were taken and the concealment began before the appointment of the trustee. But if the concealment which began before the appointment of the trustee continued after the appointment was made, and there was evidence in this case showing that it did, it constituted concealment from him. This we decided in the Cohen Case, supra.

[6] The defendant took the stand and testified in his own behalf. It is urged upon us that error was committed at the trial in the admission of certain evidence. The defendant's attorney was permitted to say:

"I was retained by Mr. Kaufman (the defendant) as attorney for the Daisy Shirt Company, and also to represent him individually."

It was objected that this evidence was calculated to bias or prejudice the defendant in the eyes of the jury. We see no valid objection to the admission of the testimony. If the attorney was retained by the defendant to represent him personally in the bankruptcy proceedings, the fact cannot be regarded as privileged. It was necessary for the witness to give this testimony before he could claim his privilege as to communications which passed between him and the attorney about which he was asked and which were excluded upon the theory that they were privileged. Whether any error was committed in refusing to allow the communications which may have passed between the defendant and his counsel in respect to the commission of a crime or a fraud, the legal adviser being ignorant of the purpose for which the advice was wanted, is not before us. But it may be remarked in passing that it has been held in England that a communication made in furtherance of any criminal or fraudulent purpose is not privileged. Queen v. Cox, 14 Q. B. II, 153. And the English rule appears to have been regarded with favor in the Supreme Court of the United States in Alexander v. United States, 138 U. S. 353, 11 Sup. Ct. 350, 34 L. Ed. 954, the rule being limited to cases where the party is tried for the crime in furtherance of which the communication was made, although the attorney declared in the case at bar that he had been retained by the defendant, the defendant while on the stand positively denied that he had been so retained. In view of his testimony on that point, we fail to see what right he has to raise the question of privilege at all. He cannot blow hot and cold at the same time. But irrespective of his right to raise the question, there is nothing in the point which he seeks to make.

[7] The defendant predicates error upon a refusal to charge "that if upon the whole case the jury should find that the evidence is evenly

balanced, or that they are unable to determine where the truth lies, then that would create a reasonable doubt, and the defendant is entitled to an acquittal." The charge was a full, clear, explicit, and fair one, covering all the aspects of the case. The instructions upon the law were sufficiently distinct and precise. On the subject of reasonable doubt the jury was charged as follows:

"Now, in this, as in all other criminal cases, all of the facts must be proved against the defendant beyond a reasonable doubt, which is, as Mr. McIntyre (the defendant's counsel) told you. That does not mean that you should look around to see what remote or unreasonable theory you can imagine that might throw it out. If every suggestion which is not obviously fictitious is excluded from your mind, so that your minds are settled that the man is guilty, then you bring a verdict against him. It is only in case you shall have some doubt, for which you can give a sensible reason, that you are to bring in a verdict of guilty."

What Mr. McIntyre had told the jury about "reasonable doubt" does not appear in the record. If he thought that what he said to the jury on the subject, which the court adopted and supplemented, was not adequate, he should have had what he said on that subject incorporated into the record for our information. The accused was entitled to have the jury instructed that the prosecution must prove the charge against him beyond a reasonable doubt. Some courts have declared that it is not necessary for the trial judge to define or explain the words "reasonable doubt." State v. Davis, 48 Kan. 1, 28 Pac. 1092; State v. Reed, 62 Me. 129; State v. Robinson, 117 Mo. 649, 23 S. W. 1066. The Supreme Court of the United States, in Miles v. United States, 103 U. S. 304, 312 (26 L. Ed. 481), said "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." And the same court, speaking through Mr. Justice Brewer, in Dunbar v. United States, 156 U. S. 185, 199, 15 Sup. Ct. 325, 39 L. Ed. 390 (1894), referred approvingly to what was said in the Miles Case. We are not now expressing any opinion upon whether the trial judge is or is not bound to define a reasonable doubt. But we fail to discover after what had already been said upon the subject any reason why the court should have enlarged upon it by complying with the request of counsel to charge in the words requested. The subject had already been adequately covered.

[8] There was no evidence that Kaufman was holding the moneys under an agreement with the bankrupt to do with them what it asked. Of course, if there had been such evidence, it would have been important in establishing the guilt of the defendant. But the absence of such evidence does not impair the government's case, for it is not at all important whether the defendant in taking and concealing the assets was concealing them on behalf of the bankrupt or for himself. The offense consists in concealing from the trustee any of the property belonging to the bankrupt. What may be the purpose of the concealment and who is to benefit by it does not enter into the matter. The wrong that is being punished is the withholding from the trustee, and therefore from the creditors, property to which they are entitled.

[9] There is no error of law and the evidence abundantly supports

the verdict of the jury. The jury has found under instructions of the court that the assets were secreted under a general scheme and that the defendant aided and abetted the bankrupt corporation in the concealment of its assets from its trustee in bankruptcy. The defendant admitted he had taken the moneys and that he had never turned over a dollar to the trustee. His claim that he paid $400 to one Kuntz on a debt due to the latter from the corporation was denied by Kuntz. Neither his wife, nor his mother-in-law nor his brother were called to corroborate him in the story he told as to payments made to them in payment of debts due to them likewise from the corporation. His sister took the stand to corroborate him as to payments made to her by him, but her testimony was properly characterized by the trial judge as extraordinary and was evidently not believed by the jury. As soon as he obtained the money of the bankrupt, he left the United States without informing any one where he was going. He did not even wait to surrender the lease to his apartment or to look after the storage of his furniture. He never communicated with the trustee, nor did he in any way assist in straightening out the affairs of the bankrupt corporation of which he was president and general manager. The case is a particularly flagrant one, and the majority of the court discover no reason for reversing the judgment.

Judgment affirmed.