## BARRON v. UNITED STATES (two cases).

(Circuit Court of Appeals, First Circuit. May 7, 1925.)

Nos. 1766, 1767.

1. Bankruptcy ⬤➔492—Conspiracy ⬤➔28—Officers of corporation may be indicted for conspiracy to conceal property of bankrupt from trustee, or for aiding and abetting corporation while bankrupt in concealment of assets.

Officers of corporation may be indicted, under Rev. St. § 5440 (Comp. St. § 10201), for conspiracy to conceal property from the trustee in bankruptcy of corporation, or under Criminal Code, § 332 (Comp. St. § 10506), may be indicted for aiding and abetting corporation while a bankrupt in concealment of its assets.

2. Bankruptcy ⬤➔492 — Persons aiding and abetting bankrupt in concealment of assets from trustee are liable as principals.

Though offense, under Bankruptcy Act, § 29b (Comp. St. § 9613), of concealing assets from trustee in bankruptcy, can only be committed by bankrupt, all who aid and abet in such concealment are liable as principals under Criminal Code, § 332 (Comp. St. § 10506).

3. Bankruptcy ⬤➔492 — Corporation may be guilty of offense of concealing assets from trustee in bankruptcy, though not subject to penalty.

Corporation may be guilty, under Bankruptcy Act, § 29b (Comp. St. § 9613), of offense of concealing its assets from trustee in bankruptcy, though not subject to penalty prescribed.

**4. Bankruptcy ⬅494—Indictment for aiding and abetting bankrupt in concealment of its assets held not demurrable, as failing to allege time of such aiding and abetting.**

Indictment under Criminal Code, § 332 (Comp. St. § 10506), for aiding and abetting corporation, while bankrupt, in concealment of its assets, which alleged appointment of trustee on February 1st, concealment of assets by bankrupt on February 9th, and then alleged that defendant did aid and abet said corporation in concealment of property as aforesaid, *held* not demurrable as not sufficiently alleging time of such aiding and abetting.

**5. Bankruptcy ⬅494—Indictment for aiding and abetting bankrupt in concealment of assets held not defective for failure to allege where offense was committed.**

Indictment under Criminal Code, § 332 (Comp. St. § 10506), for aiding and abetting bankrupt in concealment of its assets, which alleged commission of offense of concealment by bankrupt to have been committed in District of Massachusetts, *held* not demurrable for failure to aver where offense of aiding and abetting was committed.

**6. Criminal law ⬅304(1)—Court will take judicial notice that schedule in bankruptcy must be verified by person subscribing.**

Courts will take judicial notice of fact that schedule in bankruptcy under Bankruptcy Act, § 29b (Comp. St. § 9613), form of which is prescribed by General Orders of the Supreme Court of the United States, is to be verified by oath of party who has subscribed them.

**7. Bankruptcy ⬅494 — Indictment, charging making of false oath to schedules filed in bankruptcy proceeding, sufficient, without allegation that schedules were subscribed by defendant.**

Indictment under Bankruptcy Act, § 29b (2), being Comp. St. § 9613, for making false oath to schedule filed by bankrupt corporation, *held* sufficient, without allegation that schedules were subscribed by defendant.

**8. Witnesses ⬅246(1)—Court's questioning of notary public, who took defendant's oath in prosecution for having made false oath to schedules filed in bankruptcy, held not error.**

In prosecution for having made false oath to schedules filed by bankrupt corporation, where notary public called by state was obviously an unwilling witness and made evasive answers, it was not error for court to call his attention sharply to certificate which he had signed and ask him whether the statement over his signature was true or not.

**9. Criminal law ⬅322—That notary taking oath to schedule performed his duty, and that certificate speaks truth, presumed, in absence of contrary evidence.**

That notary public taking oath to schedule in bankruptcy filed under Bankruptcy Act, § 29b(2), being Comp. St. § 9613, in form prescribed by General Orders of Supreme Court, performed his duty, and that certificate speaks truth, will be presumed, in absence of evidence to contrary.

**10. Bankruptcy ⬅495—Admission of evidence as to acts of defendant's employee, in prosecution for having aided and abetted bankrupt corporation in concealing its assets, held not reversible error.**

In prosecution for having aided and abetted corporation in concealing, while a bankrupt, part of its assets from trustee, where there was evidence that employee of defendant under defendant's direction had removed merchandise from bankrupt's stockroom stored it in cottage, and that later he took such merchandise from cottage and started for another place, and on the way was arrested and later indicted for breaking and entering cottage it was not reversible error under Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), to permit him to testify that he first stated to chairman of creditors' committee what he had done, as bearing on issue whether he had stolen the goods and secreted them.

**11. Criminal law ⬅1170(4) — Excluding answer to question which has been previously put and answered is not error.**

Excluding answer to question which has been previously put and answered is not error.

**12. Bankruptcy ⬅495—In prosecution of corporation president for aiding and abetting corporation in concealing assets from trustee, admission of evidence as to corporation's delinquency in payment of debt not reversible error.**

In prosecution of corporation's president for having aided and abetted bankrupt corporation in concealment of its assets from trustee in bankruptcy, admission of testimony as to difficulty which corporation creditor had in collecting note, and as to unfulfilled promises of payment by defendant, *held* not reversible error.

**13. Bankruptcy ⬅496 — In prosecution for having aided and abetted in concealment of corporate assets from trustee, requested instructions held unwarranted by evidence.**

In prosecution of corporation president for having aided and abetted corporation in concealing assets from trustee in bankruptcy, requested instructions to acquit, if trustee at instance of his appointment had knowledge of such concealed assets or of such concealment, *held* unwarranted by evidence.

**14. Bankruptcy ⬅496—Refusal of requested instruction, in prosecution for aiding and abetting in concealment of assets of bankrupt, not error.**

In prosecution of corporation president for having aided and abetted corporation in concealment of its assets from trustee in bankruptcy, denial of requested instruction that defendant was under no personal obligation to disclose to trustee whereabouts of assets of corporation, and that mere silence did not amount to aiding and abetting alleged concealment, *held* not error.

Bingham, Circuit Judge, dissenting.

In Error to District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Joseph Barron was convicted of aiding and abetting a corporation in concealing, while a bankrupt, part of its assets from its trustee in bankruptcy, and for having made false oath to schedules of bankrupt corporation, which as its president he subscribed and caused to be filed in bankruptcy court, and he brings error. Judgment affirmed in each case.

Elisha Greenhood, of Boston, Mass., for plaintiff in error.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. In one of these cases the plaintiff in error, hereinafter called the defendant, was indicted for aiding and abetting the Barron Furniture Company in concealing, while a bankrupt, part of its assets from its trustee in bankruptcy; and in the other case he was indicted for having made a false oath to the schedules of the Barron Furniture Company, which, as its president, he subscribed and caused to be filed in the bankruptcy court. He was convicted under both indictments, and sentenced to serve terms of imprisonment to run concurrently.

The Barron Furniture Company, a corporation having its usual place of business at Brockton, in the District of Massachusetts, was adjudicated a bankrupt January 11, 1923, upon an involuntary petition.

The defendant was the president of the corporation, and it is not in dispute that the signatures to the schedules of assets, "Barron Furniture Company, Joseph Barron, President," were written by him. Upon schedule B-2, at the right of the words, in print, "Stock in trade in business of —— at," appeared in writing the following:

"Furniture uncertain; retail at 69 Centre St. and at storehouse, 18 Plymouth St., Brockton."

The defendant made oath to these schedules before I. Manuel Rubin, a notary public, on the 6th day of February, A. D. 1923, as appears from the certificate, in the usual form, of the said Rubin.

The evidence disclosed that two truck loads of furniture, trunks, draperies, and carpets, all of the value of about $2,500, were removed in December, 1922, upon two different occasions, from the store of the Barron Furniture Company at Brockton, to a

5 F.(2d)—51

cottage at Wareham, Mass., by one Wardwell and one Nye, who were in the employ of the furniture company. Wardwell testified that he and Nye did this by direction of the defendant on each occasion.

Demurrers were filed to both indictments, which were overruled, and the errors assigned are the overruling of these demurrers, exceptions to the admission, and the exclusion of evidence, and the denial of requests for rulings. The demurrer in each case is general, except that to the "aiding and abetting" indictment, which avers that it does not show "when or where" the defendant "aided and abetted."

In support of the demurrer to the indictment for aiding and abetting, it is contended that, under section 29b(1) of the Bankruptcy Act (Comp. St. § 9613) only the bankrupt can be convicted of the crime of concealment of assets, and that not even an officer who aids or abets a bankrupt corporation in the concealment of its assets is indictable; and, in support of this contention, United States v. Lake (D. C.) 129 F. 499, and Field v. United States, 137 F. 6, 69 C. C. A. 568, are cited.

In United States v. Rabinowich, 238 U. S. 78, page 86, 35 S. Ct. 682, 684 (59 L. Ed. 1211), the court said:

"It is at least doubtful whether the crime of concealing property belonging to the bankrupt estate from the trustee, as defined in section 29b(1) of the Bankruptcy Act, can be perpetrated by any other than a bankrupt or one who has received a discharge as such."

[1] This statement was not necessary to a decision of the case. Since this obiter dictum, the courts in several circuits have decided that, upon the weight of authority and of reason, the officers of a corporation may be indicted under section 5440 (Comp. St. § 10201) for conspiracy to conceal the property of a bankrupt from the trustee in bankruptcy. Cohen v United States, 157 F. 651, 85 C. C. A. 113; United States v. Young & Holland Co. et al. (C. C.) 170 F. 110; United States v. Freed (C. C.) 179 F. 236; Roukous et al. v. United States, 195 F. 353, 115 C. C. A. 255; Conetto v. United States, 251 F. 42, 163 C. C. A. 292; Frankfurt v. United States, 231 F. 903, 146 C. C. A. 99.

In Roukous v. United States, 195 F. 353, 115 C. C. A. 255, this court declined to follow Field v. United States, 137 F. 6, 69 C C. A. 568, which was cited by the defendant in the instant case in support of his contention that the defendant, as an officer of the bankrupt corporation, cannot be indicted for aiding and abetting the conceal-

ment of its assets, and stated at page 356 that it yielded to the determination in Cohen v. United States, supra.

In several cases it has been decided that an officer of a corporation may be indicted under section 332 of the Criminal Code (Comp. St. § 10506) if he has aided and abetted the corporation, while a bankrupt, in the concealment of its assets from its trustee.

In Kaufman v. United States, 212 F. 613, at page 617, 129 C. C. A. 149, 153 (Ann. Cas. 1916C, 466), a case which arose in the second circuit, an officer of a corporation was indicted and convicted of aiding and abetting the corporation in concealing the assets from its trustee, and the court said:

"It may be conceded that defendant could not be convicted under section 29b of the Bankruptcy Act. That section applies only to one who has 'knowingly or fraudulently concealed while a bankrupt or after his discharge.' As the defendant is not alleged ever to have been a bankrupt, the section is without application to him. It was held, in Field v. United States, 137 F. 6, 69 C. C. A. 568, that the present or past bankruptcy of the person accused was an indispensable element of the offense created by that section. The defendant, however, is mistaken in supposing that the principle announced in the Field Case is so far applicable to his case as to require this court to set aside his conviction. He loses sight of the fact that his own conviction is not under section 29b of the Bankruptcy Act, which was under discussion in the Field Case, but is under section 332 of the Criminal Code.

"The offense with which the defendant is charged is that he aided and abetted the Daisy Shirt Company while the said company was a bankrupt knowingly and fraudulently to conceal from the duly qualified trustee property belonging to the estate in bankruptcy."

The court also said, at page 617 (129 C. C. A. 153):

"There is no distinction in principle between the Cohen Case, supra, and the case at bar. The fact that in the Cohen Case the indictment was for conspiracy under section 5440 of the Revised Statutes, while in this case the indictment is based on a concealment of assets, is a distinction without a difference so far as the principle involved is concerned."

In Wolf et al. v. United States, 238 F. 902, 152 C. C. A. 36, a case which arose in the Fourth Circuit, the officers of a corporation were indicted for aiding and abetting in the concealment of the corporation's prop-

erty when a bankrupt and the court declined to follow United States v. Lake (D. C.) 129 F. 499, and Field v. United States, 137 F. 6, 69 C. C. A. 568, and expressed itself as better satisfied with the reasoning of later cases.

In Reinstein et al. v. United States (C. C. A.) 282 F. 214, parties other than the bankrupt, which was a partnership, were indicted for aiding and abetting the bankrupt in the concealment of its assets, and the court said, at page 216:

"It is equally obvious that Reinstein, on the story believed by the jury, aided, counseled, and probably procured the commission of the act of concealment. He is therefore a principal, within Penal Code, § 332 (Comp. St. § 10506).

In this case certiorari was denied. 260 U. S. 722, 43 S. Ct. 12, 67 L. Ed. 481.

Section 332 of the Penal Code (Comp. St. § 10506) is as follows:

"Sec. 332. Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

[2] While under section 29b of the Bankruptcy Act the offense of the concealment of assets from a trustee in bankruptcy can only be directly committed by the bankrupt, all who aid or abet the bankrupt in such concealment are by virtue of section 332 made liable as principals.

[3] A corporation may be guilty of the offense of the concealment of its assets under section 29b of the Bankruptcy Act, although it may not be subject to the penalty prescribed. It was so held in Cohen v. United States, supra, which cites United States v. Van Schaick et al., 134 F. 592.

The Cohen Case was followed by this court in Roukous v. United States, supra. In the Kaufman Case, supra, the Court of Appeals in the Second Circuit reaffirmed its decision in the Cohen Case.

[4] It also was urged in support of the demurrer that the indictment does not aver when the alleged aiding and abetting occurred, whether before or after the appointment of the trustee. The indictment alleges that the adjudication of the corporation was on January 11, 1923, the appointment of a trustee on February 1st following, and the concealment of assets by the bankrupt on February 9th. It then alleges that the defendant "did aid and abet said corporation in the concealment of said property as aforesaid." The alleged aiding and abetting relates back to the concealment, which was alleged to be February 9th.

Although the property alleged to have been concealed was alleged to have been taken from the store of the Barron Furniture Company in Brockton in December, 1922, yet, its concealment was continued until after the adjudication and the appointment and qualification of the trustee; and therefore the concealment in which the defendant is alleged to, have aided and abetted continued after the adjudication and appointment and qualification of the trustee. Reinstein v. United States (C. C. A.) 282 F. 214; Conetto v. United States, 251 F. 42, 163 C. C. A. 292; Kaufman v. United States, 212 F. 613, 129 C. C. A. 149, Ann. Cas. 1916C, 466; Warren v. United States, 199 F. 753, 118 C. C. A. 191, 43 L. R. A. (N. S.) 278; Glass v. United States, 231 F. 65, 145 C. C. A. 253.

[5] As the commission of the offense of concealment of assets by the bankrupt is alleged to have been committed in the District of Massachusetts, it is immaterial that it is not alleged in the indictment where the defendant aided and abetted in the commission of the offense, as by such aiding and abetting he became liable as a principal by virtue of the statute. There was therefore no error in overruling the demurrer to the indictment for the concealment of assets.

The demurrer to the indictment for taking a false oath in bankruptcy proceedings was based upon the fact that in the indictment there was no allegation that the defendant had subscribed the schedule of assets to which he made oath as president of the corporation. The indictment alleges, in substance, that the defendant, as president of the corporation, in relation to a proceeding in bankruptcy, unlawfully, knowingly, and fraudulently did make a false oath before I. Manuel Rubin, a notary public, having authority to administer an oath in said proceeding to said Barron; that "a certain written declaration theretofore and thereafter filed in said District Court, purporting to be a schedule of said the Barron Furniture Company's property, was a statement of its estate, both real and personal, according to the acts of Congress relating to bankruptcy"; and, in substance, that the defendant did not believe that the property set forth and shown in said written declaration included all the assets of the said Barron Furniture Company; that it possessed and owned a large amount of property not set forth and shown in said declaration, which was well known to the defendant; and that the written declaration to which the defendant made oath was one to the truth of which, in said pro-

ceedings in bankruptcy, he was required by law to make oath.

[6, 7] We take judicial notice of the fact that the schedules in bankruptcy, the form of which is prescribed by General Orders of the Supreme Court of the United States, which have the force of law, are required to be verified by the oath of the party who has subscribed them, and we think the indictment was sufficient without an allegation that the schedules were subscribed by the defendant.

Section 29b(2) makes a person liable to punishment upon conviction of the offense of having "made a false oath or account in, or in relation to, any proceeding in bankruptcy." Such false oath may be made, even where there is no written declaration to be subscribed, but where it has been made in any proceeding in bankruptcy.

The indictment contains a sufficient allegation that he made, a false oath and that this was in a proceeding in bankruptcy. This proceeding was described with sufficient precision to apprise the defendant of the nature of the charge against him. There was no error in overruling the demurrer to this indictment.

[8] It is assigned as error that the court called the attention of the notary to his certificate and asked this question: "You observe that you have made a statement there over your signature as a notary public. Is that statement true or not?" The witness answered: "I believe it is true."

The witness then read the certificate, and was asked by the court: "Now, having read that, can you tell what the oath was that you administered to Barron?" The witness answered: "No; I cannot tell the exact words; the substance would be that the statement he had made and that he had set out in the schedules—that the schedules were true."

The defendant objected to the introduction in evidence of the certificate of the notary, Rubin, as a notary public, and asked the court to exclude that portion of the schedules from the evidence. His request was denied, and exception was taken, and the schedules, including the certificate, were offered in evidence.

The notary testified that he was counsel for the Barron Furniture Company, and prepared the schedules because of a telephone call from another lawyer, and that, as a result of this call, the defendant came to see him, and his subsequent dealings were with the defendant, except for information that he got from the clerk of the corporation. It is evident that he was not a willing witness for

the government, and we think there was no error in the court's calling his attention to the words of his certificate in asking directly whether it was true or not, and that his answer to the question of the court was evidence of the truth of the statement in the certificate to be considered by the jury.

[9] While the notary testified that he had no present recollection of the form of oath which he administered to the defendant, yet, as the form is one prescribed by the General Orders of the Supreme Court which govern bankruptcy proceedings, and the notary a public official, authorized by law to administer such oath, it will be presumed, in the absence of any evidence to the contrary, that he correctly discharged his duty, and that his certificate states the truth. It was because of the evasive answers of the notary that the court called his attention sharply to the certificate which he had signed, and put to him the question to which objection was made. We think the certificate and the answer of the notary were admissible.

[10] One Wardwell, in the employ of the bankrupt corporation, testified that he, in the month of December, 1922, upon two occasions, with one Nye, by the defendant's direction, removed certain merchandise from the store of the Barron Furniture Company at Brockton to a cottage at Wareham, and at the end of his direct examination he was asked to whom he first told this story, and was allowed to answer, over the plaintiff's objection, to which an exception was saved, and this is assigned as error. It is argued that this was merely an attempt to bolster up the credibility of the witness and obviously inadmissible.

The record contains but a fragmentary part of the testimony which was taken, but that part discloses that the witness Wardwell later went with a truck to the cottage at Wareham, removed a substantial part of the merchandise which had been stored there and started for Brockton; that on his way there he was arrested by the police in Bridgewater and indicted for breaking and entering the cottage. The record also states that "the cross-examination of Wardwell and other goverment witnesses proceeded on plain intimation that Wardwell or Nye, or both, had taken the merchandise in question, either from the store or from trucks they drove for the corporation while they were in its employ, and removed them directly or indirectly to said cottage." It also appears from a statement of the presiding judge in his charge that the defendant Barron furnished bail for Wardwell in the criminal proceeding against him.

We cannot say, without all the evidence before us, whether it was material as bearing upon the question of whether Wardwell had stolen the goods and secreted them to show that he had stated what he had done to the chairman of the creditors' committee, as he testified. It does not appear when this statement was made by him nor how soon after the goods were taken to the cottage at Wareham. We cannot say that, if he disclosed what he had done soon after he had taken the goods to Wareham, it would not have tended to show that he had not stolen them. The presiding judge, who had heard all the previous testimony and the claims made by defendant, had far better opportunity to judge of the admissibility of this testimony than is afforded us by the very fragmentary record in the case. But, if this testimony were technically inadmissible, it was, as the case developed, of little or no importance. At any rate on this record we cannot hold it reversible error. Act of February 26, 1919, 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246).

[11] The defendant also assigned as error that a question asked of the witness Wardwell was excluded. The question was: "Haven't you told some one that some accusation had been made against Barron on a subject very dear to you?" The witness had previously been asked this question on cross-examination: "Mr. Wardwell, isn't that the truth that some one, either a detective or a creditor, made to you a serious accusation against Barron with reference to a subject very dear to you?" And he answered: "No, sir." The question having been already put and answered, there was no error in excluding its repetition.

[12] It is also assigned as error that the government was allowed to introduce evidence of a conversation between the defendant and one Warren, early in December, 1922, in which Warren testified that he had correspondence with the defendant about a matured note, and a few days after its maturity had an interview with the defendant in his office and asked what he was going to do about it. The defendant replied that he had mailed him a check "last night," but on the next day, not having received the check, he called the defendant by telephone and told him that he had not received it; that defendant replied that he had just talked with his bookkeeper, and that she had the check there and would mail it, but that he had never received the check; that he again

called the defendant by telephone, who replied that he would mail the check, and the witness told him not to do that—that he would send down for it. The defendant did not testify in either case. The only effect of the testimony to which exception was taken was that it might possibly have affected the credibility of the defendant had he testified.

As all the testimony is not before us, we cannot judge, as could the presiding judge, whether this testimony had such reference to other testimony that had been taken, or to other aspects of the case, as to make it admissible. It may have been material to show that the bankrupt corporation, which was, in effect, really the defendant, who used the corporation as an instrumentality of doing business, was in a failing condition on the 1st of December, the very month in which these goods were alleged to have been spirited away from the Brockton store, and that the defendant was then assisting and aiding the corporation in preparing for bankruptcy. We do not think the verdict should be set aside for this alleged error.

[13] The defendant requested the ruling, which was not given, and to which exception was taken:

"If, at the instant of his appointment, the trustee had information that the merchandise in question was where it then was, there was no concealment from the trustee, and the defendant must be acquitted."

And also:

"If defendant thought the trustee, when appointed, had such knowledge, there was no such concealment."

The requests were correctly refused, because not applicable to the facts disclosed by the evidence.

The trustee testified that, about a week before he was appointed as trustee, he heard the rumor that there was some property of the bankrupt corporation at the cottage at Wareham, but that he did not go down to investigate the truth of this rumor until February 18th, nearly three weeks after his appointment. There was then no evidence that the trustee knew that this merchandise was in the cottage at Wareham at the time of his appointment.

[14] It is also assigned as error that the court refused to instruct the jury that the "defendant was under no personal obligation to disclose to the trustee the whereabouts of any assets of the corporation, and his mere silence did not amount to aiding and abetting the alleged concealment."

It was the duty of the defendant, as the president of the bankrupt corporation, to include in its schedule of assets all of its property, real and personal. If he had failed to do so, and remained silent in regard to the removal of the goods to Wareham, it was for the jury to decide whether, by this failure and silence, the defendant was guilty of willfully and knowingly aiding and abetting the corporation in the continuing concealment of assets. In re Bacon (D. C.) 205 F. 545.

The judgment of the District Court is affirmed in each case.

BINGHAM, Circuit Judge (dissenting). I regret that I am unable to agree to the opinion of the court. It seems to me that, in the interest of justice and fair trial, the judgment and verdict should not be sustained, for the reason, if for no other, that incompetent and highly prejudicial testimony was introduced by the government and allowed to be considered by the jury. This testimony bore upon the charges made in both indictments.

In the first indictment the defendant was charged with having aided and abetted the Barron Furniture Company, a bankrupt corporation of which he was president, in concealing a large amount of its assets from the trustee, and in the second indictment with having made a false oath to the schedules of the bankrupt's assets.

It appeared in evidence that a very substantial amount of furniture belonging to the Barron Furniture Company had been taken, prior to the filing of the petition in bankruptcy against it, to Wareham, and stored in a cottage there. These are the goods which it is alleged in the first indictment the defendant aided the Barron Furniture Company in concealing, and are the same goods that it is alleged in the second indictment were omitted from the schedules of the assets of the Barron Furniture Company, to which the defendant made oath.

One Wardwell, a witness for the government, and who had been in the employ of the Barron Furniture Company, testified that on two occasions in December, 1922, about Christmas time, he and one Nye, by the defendant's direction, took the furniture in question from the store of the Barron Furniture Company at Brockton to Wareham, where they stored it in a cottage; that they entered the cottage by means of a key which Nye had, and with which the witness opened the door. During the direct examination of this witness, and at the end thereof, the United States attorney asked this question: "To

whom did you first tell this story of furniture?" (meaning the story about taking the furniture to the cottage at defendant's direction), and was allowed to have it answered, subject to the defendant's exception. The answer was, "Mr. Warren," who later testified as a witness for the government. It further appeared that on February 18, 1923, in the nighttime, Wardwell went with a truck to the cottage, entered it, and removed a substantial part of the furniture stored there; that on his way back to Brockton he was intercepted at Bridgewater by the police, and thereafter arrested and indicted for breaking and entering. In the cross-examination of Wardwell and other government witnesses, it was plainly intimated that Wardwell or Nye or both had taken the furniture in question, either from the store of the Barron Furniture Company, or from a truck they drove while in the employ of the company, and removed it to the cottage, and that on the night of February 18th Wardwell was removing it from the cottage to some other place.

The charge of the court to the jury is included in the bill of exceptions. In it the court told the jury that it did not seem to him there was "any doubt that a very substantial amount of goods were taken out of the store of the Barron Furniture Company and moved down to Wareham, Mass., and stored in this cottage on Sea street. Just when that was done is a matter which depends on the evidence of Wardwell, but he says it was done during December, and before apparently the bankruptcy petition against the company was filed. The case really turns, both cases, as I think you will find, on whether you are satisfied beyond reasonable doubt that these goods were moved down there with Barron's knowledge and assent, and as part of the scheme in which Barron was engaged. * * * The real crux of the matter is, Are you satisfied that Barron was concerned in that spiriting away and concealment of the goods? * * * "

"So, I think you will find that both indictments turn around one question, Are you satisfied that Barron knew about this movement of goods to Wareham, in December, and that he was a party to it, and that his purpose was to defraud the creditors of the Barron Furniture Company?

"Much depends on Wardwell's story, and Wardwell is a witness whose testimony a lawyer would say does not carry much weight. He is a self-confessed criminal. * * * "

"Two things are possible, either that Wardwell's story is true, and that Barron was preparing against a fraudulent bankruptcy, which is the government's charge here, or that Wardwell and Nye were stealing the goods on their own account.

"Wardwell, of course, says that the first is the fact. We may readily believe that Wardwell would not be above the second. * * * * "

In the bill of exceptions, which was duly approved by the District Judge, and following the setting forth of the matters relied upon by the defendant as errors occurring during the course of the trial, appears the following:

"The foregoing is a statement of all the evidence in the case material to a determination of any exception saved or ruling requested."

Now it is apparent from the foregoing that Wardwell was a self-confessed criminal; that the government's case, so far as there was evidence implicating the defendant, depended almost wholly upon the testimony of Wardwell; that, if the jury disbelieved his testimony, its case would fall; and that it was very material to the government that his testimony should be believed. As an aid in this direction he was allowed to testify that he first told Warren this story about the furniture having been taken to the cottage at the defendant's direction. This was a plain attempt to bolster up the credibility of the witness. It was pure narration of a past occurrence, and was clearly inadmissible. It was not only inadmissible, but was highly prejudicial.

The bill of exceptions clearly sets forth the situation under which the evidence was admitted, and, to render the matter doubly certain that we have before us all the evidence essential to a proper consideration of the question, it contains the statement above quoted, that the record embraces "all the evidence in the case material to the determination of any exception saved or ruling requested."

The court in its opinion seeks to carry the idea that "it does not appear when this statement was made by him (Wardwell), nor how soon after the goods were taken to the cottage at Wareham"; that, "if he disclosed what he had done soon after he had taken the goods to Wareham," they could not say that "it would not have tended to show that he had not stolen them." But the burden was on the government to make it appear that the testimony in question, which it was offering, was competent. This it failed to do. There was no claim by the government that the statement of Wardwell was made under circumstances that would render it

admissible as a part of the res gestæ, and there is no evidence showing that it was made at the time he removed the furniture to the cottage, or was so closely related in time that his statement could be found to be a part of the res gestæ, and not mere narration of a past event. There can be no question but that, under the circumstances presented in this case, the testimony was material and highly prejudicial. It was of the essence of the government's case that Wardwell be believed; he was a self-confessed criminal; and to carry conviction that his testimony as to removing the furniture at the defendant's direction was true, the government was permitted to show that, after the removal of the furniture, he first told Warren that he removed it at the defendant's direction.